## THE CITY OF CHICAGO

### *v.*

## THE PEOPLE OF THE STATE OF ILLINOIS *ex rel.*  HIRAM NORTON *et al.*

1.  MANDAMUS *against a city to pay — effect of stipulation.*  In a proceeding by mandamus to compel a city to pay a claim alleged to be due to the relator, a peremptory writ was awarded, requiring the city to pay the claim.   It was objected that the command should have been to levy a tax to pay the claim, not a peremptory order to pay.   But the parties had stipulated that if, upon a decision of the cause, the court should be of opinion the relator was entitled to any relief against the city, by any remedy, then a peremptory writ might issue for the sum claimed, the writ to be in such form as the court might think proper, and this obviated the objection taken.

2.  SPECIAL ASSESSMENTS IN CHICAGO — *of a new assessment.*  Where the proceeds of a special assessment, levied for the purpose of constructing public improvements in the city of Chicago, become insufficient for the purpose indicated, by reason of the failure of the city to collect the amount assessed upon particular property, there can be no new assessment upon the other property embraced in the original assessment, which is not delinquent, to supply such deficiency — not under section 36 of chapter 7 of the city charter, because that section confines the new assessment to delinquent property.

3. Nor under the 35th section of the same chapter, because the commissioners of the board of public works and the common council, the tribunal appointed by the city charter to determine in the first instance what proportion of the cost of the contemplated improvement should be assessed, in the way of special benefits, upon each piece of property, having acted, and the property owners acquiesced and paid the amount, the same tribunal can not be allowed to review their own action for the purpose of supplying such deficiency.

4. CONTRACTS *with a city — where the specific mode of payment can not be made available.* An individual entered into a contract with the city of Chicago, to execute certain public improvements, in the way of curbing, filling and macadamizing a street, the city agreeing to pay for the same when the work was completed and accepted, and when the special assessment, levied or to be levied for the same, should be collected. A part of the assessment could not be collected, for the reason that the city had, by contract with the owner of the property upon which it was levied, expressly exempted it from such assessments, and the assessment was, therefore, to that extent void: *Held,* the condition of the contract to pay when the assessment should be collected being impossible and void, the promise, to that extent, was single and absolute, and the contractor having no notice of such void assessment at the time he assented to such condition, would have his remedy against the city to recover what he would have been entitled to had the entire assessment been valid.

5. If a person promise to pay a sum of money when he shall collect his demands of another, then, if it appear that he had no demands, or if he have, and fail to use due diligence to collect them, in either case the promise may be enforced as absolute.

6. SAME — *effect of certain provisions of the charter of the city of Chicago.* Section 17 of chapter 6 of the charter provides, that " any persons taking any contracts with the city, and who agree to be paid from special assessments, shall have no claim or lien upon the city in any event, except from the collections of the special assessments made for the work contracted for." But this does not preclude the courts from determining the legal effect of a contract to be, that where the city has no such assessments as it purports to have, the party is to be deemed as not so agreeing.

7. Nor does the construction, that the contractor does not agree to be paid out of assessments which can not be collected, operate to render the contract void, under a clause of the same section, which declares that " no work to be paid for by a special assessment shall be let, except to a contractor who will so agree." That clause is merely directory.

8. INTEREST — *against a municipal corporation.* A municipal corporation is not liable to pay interest, except by express agreement so to do.

9. SAME — *what amounts to an agreement to pay interest.* Where a person took a contract to do certain work for a city, and to be paid therefor from special assessments, an agreement by the city, that the contractor should receive the damages which the city might collect of the property owners in respect of such assessments, is not equivalent to an agreement to pay interest.

APPEAL from the Superior Court of Chicago.

The opinion of the court contains a sufficient statement of the case.

Mr. M. F. TULEY, for the appellant.

Messrs. BACON & NORTON, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This case arises upon demurrer to the return of appellant to an alternative writ of *mandamus*, awarded to compel the payment to relators of a claim of $4,728.68, alleged to be a balance due them as assignees of George W. Travers & Co., upon estimates issued to the latter for work done under a contract, for curbing, filling and macadamizing Chicago avenue.

The demurrer was sustained and a peremptory writ ordered against appellant, requiring it forthwith to pay, or cause to be paid, to relators the principal sum of $3,915.38, with interest at the rate of six per cent per annum on the several estimates comprising said principal sum from the respective dates of the same, amounting to $557.41, making a total amount of $4,072.79.

From which judgment an appeal was taken to this court, and the points made for reversal are : 1st. That under the contract between appellant and Travers & Co., the city was not liable for the principal sum. 2d. That interest was improperly allowed.   3d. If the city is liable, the order should have been that it proceed to levy a tax to pay the amount due, instead of a peremptory order to pay.

Before the hearing below, a stipulation between the parties was made by their respective attorneys, and filed, to the effect, that if upon the decision of the cause the court should be of opinion that in any form of action, *ex contractu* or *ex delicto*, in law or equity, the relators or George W. Travers & Co., either in their own names, or in their names to relators' use, would be entitled to recover any sum of money or have any relief of or from the respondent, then a peremptory writ of *mandamus* might issue for said amount; said writ to be in such form as the court might judge proper, waiving all objections for want or misjoinder of parties.

This stipulation, being binding upon the parties, relieves this court from all consideration of the third point made by appellant's counsel; consequently, the first and second alone will be discussed.

First, then, under any view of the matters disclosed by the record, by the allegations of the writ not traversed, and the facts stated in the return, which must, so far as well pleaded, be taken as true, would appellant be liable in any form of action at law, or proceeding in equity?

By the facts so admitted and stated, it appears that the ordinance ordering the improvement and the levy of the assessment, was passed May 3, 1867, by which the sum of $82,-563.43 was directed to be assessed upon real estate deemed specially benefited by the improvement, in proportion, as nearly as might be, to the benefits resulting thereto, and $21,048.45 be chargeable to the city at large. On the 10th of June, 1867, the assessment roll was completed, and on the 17th of the same month, the assessment was confirmed by the council, and the warrant issued on the 29th; that of the above sum assessed upon property deemed benefited, the sum of $4,965.80 was assessed upon the right of way and property of the North Chicago Railway Company, as the amount of special benefits resulting to that corporation; that before Travers & Co. entered into the contract in question, one-half of the amount of the assessment upon property deemed specially benefited had been

paid into the city treasury.    On the 14th day of August, 1867, the contract was made between appellant and Travers & Co. by which the latter undertook to do the work, the details of which it is needless to state, only that the appellant agreed to pay them when the contract should be wholly completed by Travers & Co., when the work should be accepted by the board of public works, and *when* the special assessments, levied or to be levied, should be collected.

It is admitted, that the work was completed by Travers & Co., according to contract, and accepted by the board, the estimates issued and assigned to the relators.    But it also appears, that appellant failed to collect any of the sum assessed upon the property of the railway company, and failed to obtain a judgment for it, because the railway company was wholly exempt from any such levy; that subsequently appellant attempted to levy a new assessment for the deficiency, but failed to obtain judgment, by reason, as it is alleged in the alternative writ, of its gross negligence and want of diligence in that behalf.    The allegations of negligence are specifically denied by the return.    This traverse we think is sufficient to raise an issue of fact as to the negligence in regard to the new assessment, and precludes the relators from basing any ground of recovery or relief upon it.

Under the facts disclosed, appellant had no legal authority to levy a new assessment upon property other than that of the railway company, upon which its due proportion of benefits had already been assessed, and paid — not under the thirty-sixth section of chapter 7, because that section confines the new assessment to a particular class of property, viz.: delinquent property; and if the other property had been assessed its proportion, and paid it, there was no delinquency.    This is conceded by appellant's counsel; but he insists that it could be levied under the thirty-fifth section of same chapter, which declares : " If, in any case, the first assessment prove insufficient, the board of public works shall make a second, in the same manner, and so on,

332        CITY OF CHICAGO *v.* THE PEOPLE *ex rel.*    [Sept. T.,

Opinion of the Court.

until sufficient moneys shall have been realized to pay for such public improvement."

It has been decided by this court that the source of the power to make special assessments for benefits in such cases, is the right of eminent domain; that, under the constitution, it can be exercised only by making compensation; that this compensation may be either in money or benefits. *City of Chicago* v. *Larned*, 34 Ill. 203. As to the last proposition, the court, as then composed, as appears by the opinion in the case, did not wholly concur, nor, if it were a new question, would the court, as now composed, wholly concur in it. The ruling principle recognized in that case, and others in this State, is, that, as assessments are in the ratio of advantages or benefits, they are lawful; that they are an equivalent for the increased value the property derives from the improvement. The charter of the city designates the commissioners of the board of public works, and the common council, as constituting the tribunal to determine these questions, in the first instance. They have acted; the determination has been made, property owners have acquiesced in it and paid the amount, and if the matter has not technically passed *in rem judicatum*, it would still be as much against the established principles of justice to allow it to be overhauled by the commissioners and council, as if it had been a case decided by a court of the highest original jurisdiction in the State.

It follows, from these views, that if appellant can be made liable absolutely, to the extent of this deficiency (and that constitutes the balance claimed as due), the liability must be placed upon other grounds than negligence in making a new assessment.

By the act of the general assembly creating the railway company in question, that body was authorized to use the streets only by permission of the common council, and then in such manner and upon such terms and conditions, and with such rights and privileges, as the council might, by contract with the railway company, prescribe. Under this authority,

a contract was made, long before any of the proceedings to improve Chicago avenue, by which the railway company was wholly exempted from such an assessment. The fact of the existence of this contract was peculiarly within the knowledge of appellant; but as it was not a public act, Travers & Co. are not chargeable with notice of it, and the return does not profess to assert any. The *effect* of the contract was matter of law. If both parties were chargeable with notice of its existence, no mistake as to its effect, whether mutual or unilateral, would afford any ground for relief in equity. But if Travers & Co. entered into the contract to do the work, in ignorance of the dealings between appellant and the railway company, and upon the supposition that the assessment upon the property of the railway company was valid, as it would have been but for the act of appellant exempting it, and were induced to agree to accept the agreement of appellant to pay *when* that assessment was collected, then the mistake would be one of fact on their part, which would operate as a surprise, and equity would relieve, if they had taken the proper steps to disaffirm the contract, which it seems they did not do.

But there is still another ground upon which appellant would be liable absolutely. The property of the railway company being exempt by the act of appellant, the assessment upon it was invalid. The city had no lien upon it; the amount was never due. The condition of the contract to pay when that assessment was collected was impossible and void, and the promise, to that extent, was single and absolute. That was the principle upon which the case of *Maher* v. *The City of Chicago*, 38 Ill. 266, was decided, only this is a stronger case. There, the assessment was void because of a want of power in the appellant to make the improvements by special assessment. Here, it had the power, but was disabled from exercising it by its own act.

If a person promise to pay a sum of money *when* he shall collect his demands of another, then if it appear that he had no demands, or if he have and fail to use due diligence to collect

them, in either case the promise may be enforced as absolute. *White* v. *Snell,* 5 Pick. 425; S. C., 9 id. 16.

The counsel for appellant relies upon the provision of section 17, chapter 6 of charter: "Any persons taking any contracts with the city, and who agree to be paid from special assessments, shall have no claim or lien upon the city in any event, except from the collections of the special assessments made for the work contracted for."

This provision was not intended to preclude the courts from determining the legal effect of the contract; and the difficulty with the counsel's position is, that where the city has no such assessment as it purports to have, the party is to be deemed as not so agreeing. The condition is void, and the promise single. But it may be said that, if the contractor does not so agree, then his contract is void by the last clause of the section, viz.: "and no work to be paid for by a special assessment shall be let, except to a contractor or contractors who will so agree."

Here the contract is not declared void for want of compliance; no penalty is imposed, nor is the power affected. The clause is merely directory.

The second and last point questions the decision of the court below, in allowing interest upon estimates from the respective dates of their issue.

This was error. There is no express agreement on the part of appellant to pay interest. In such case, appellant, being a municipal corporation, is not liable to pay interest. *City of Pekin* v. *Reynolds,* 31 Ill. 530. The clause of the contract providing that the contractors should receive the damages which the city might collect of the property owners, to a certain extent, is not equivalent to an agreement to pay interest.

For this error the judgment is reversed and the cause remanded.

*Judgment reversed.*