<hr />

## BARBER ASPHALT PAVING CO v. CITY OF DENVER.

(Circuit Court of Appeals, Eighth Circuit.　January 6, 1896.)

### No. 655.

1. CONTRACT—LIABILITY FOR PROMISED PAYMENT BY A THIRD PERSON.
　　One who induces a contractor to perform labor or furnish materials by the promise that a third person who, he claims, owes him a debt or duty, shall pay to the contractor the agreed price of the labor and materials he furnishes, becomes primarily liable to pay the contract price himself if he receives the fruits of the contract and his debtor does not pay, or the debt or duty did not in fact exist.

2. MUNICIPAL CORPORATION—CONTRACT TO PAY FOR STREET IMPROVEMENTS BY ASSESSMENTS.
　　A municipal corporation which contracts to pay for street improvements by assessments upon abutting property is primarily liable to pay the contract price itself, if it has no power to make such assessments, or if it fails to make them, or if the assessments it attempts to make are void.

3. SAME—CONTRACTS THAT RAILWAY COMPANIES SHALL PAY FOR STREET IMPROVEMENTS.
　　A municipal corporation which contracts that street improvements made for it shall be paid for by railway companies which occupy the street under an ordinance which requires them to make such improvements as the city directs, is primarily liable to pay for the improvements if the railway companies do not, and the corporation takes no action to compel them to do so.

　　Caldwell, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of Colorado.

The Barber Asphalt Paving Company (a corporation, and the plaintiff in error) brought an action in the court below against the defendant in error, the city of Denver, a municipal corporation, to recover a balance which it alleged that the city owed it for the performance of four contracts that it had made with the city to grade and pave with sheet asphalt portions of four of its streets.　The complaint set forth four separate causes of action,—one upon each of the contracts.　The statement of each cause of action presents the same questions for consideration here, and for that reason but one of them

will be considered. The facts alleged in the complaint as a basis for the cause of action were these: The charter of the city of Denver gave it the general power to grade, curb, and pave its streets. The railway companies using the streets had made a contract with the city, in consideration of a license granted to them by it to use these streets, to bring the streets to the official grade, and to pave them between their tracks, and for two feet upon each side of them, in a manner directed by the city. The charter also gave the city the power to assess two-thirds of the total expense of grading and paving any street, excluding the intersection of streets and alleys, upon the property abutting upon the improvement, whenever the owners of a majority of the lots fronting on the same petitioned for it. On March 13, 1892, the city determined to grade and pave a portion of Arapahoe street, and passed an ordinance for that purpose, which provided that the street-railway companies occupying the street at the time of making the improvement should pay such parts of the cost of paving as were provided by the ordinances granting them rights of way on the street; that, after making allowance for the sums so to be paid by the railway companies, the city's proportion of the cost of the improvement should be one-third of the cost of grading, curbing, and paving in front of the lots abutting upon the improvement, and the entire cost of grading, curbing, and paving the intersection of the streets and alleys; and that the remainder of the cost should be borne by the owners of lots abutting upon the improvement. Certain railway companies took possession of and occupied this street with double tracks while the improvement was being made, under an ordinance of the city which gave them license so to do, and provided that the companies "shall pave or plank the same between its rails and two feet on the outside of each rail even with the track whenever the city orders such streets to be paved, and in such manner as the city council may require." The ordinance which provided that the improvement should be made also provided for levying the assessment upon the abutting lots, and appropriated out of the fund to be raised by that assessment $30,-911.67, to pay the warrants of the city, which the ordinance provided should be issued against this amount; and it appropriated $15,448.34, not out of the general funds raised by taxation to pay the current expenses of the city, but out of a special fund, realized, or to be realized, by the sale of bonds of the city, which the board of public works of the city had authority to issue, and to apply the proceeds of, for the purpose of paving, grading, and curbing streets, and making other like improvements, in the city of Denver. The ordinance specified that this $15,448.34 was appropriated to pay the city's proportion of the expense of the improvement. After the passage of this ordinance the board of public works advertised for bids for grading and paving this street. The plaintiff in error made a bid that was accepted, and the city made a contract with it in accordance with the bid. The contract was that the plaintiff in error should furnish all the labor and materials required to make the improvement, at prices specified in the contract, and that upon the completion of the work there should be paid to it, in the manner provided by the ordinance, the sum which the labor and materials amounted to, at the prices specified in the contract. The plaintiff in error performed the contract to the satisfaction of the city. The cost of the improvement, at the prices fixed by the contract, was $38,094.05; and the city has paid $33,924.89, but refuses to pay the remaining $4,169.16. The amount unpaid is the cost of grading, paving, and improving that part of the street between the railroad tracks and within two feet outside of the rails. The paving company requested the city to collect this amount of the railway companies that occupied the street, and pay it over to the paving company; but the city refused to do so, and, after demand, refused to pay the amount itself. To this statement of a cause of action, the city demurred on the ground that it disclosed "upon its face that the city of Denver was not, under any conditions to be liable for paving between the rails, and for two feet on the outside of the rails, of the street railway, * * * but that said street railway was to be liable therefor to the plaintiff, and plaintiff was, under the contract sued on, to look to said street railway for payment for such paving." The court below sustained the demurrer, and dismissed the action. The writ of error was sued out to reverse this judgment.

Charles W. Waterman (Edward O Wolcott and Joel F. Vaile were with him on the brief), for plaintiff in error.

George Q. Richmond (F. A. Williams was with him on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the case as above, delivered the opinion of the court.

One who induces a contractor to perform labor or furnish materials by the promise that a third person, who, he claims, owes him a debt or duty, shall pay to the contractor the agreed price of the labor and materials he furnishes, cannot enjoy the fruits of the contract, and leave the contractor remediless, either because his debtor does not pay, or because the debt or duty did not exist. In either event he becomes primarily liable to pay the contract price himself. White v. Snell, 5 Pick. 425; City of Chicago v. People, 56 Ill. 327, 333; Bucroft v. City of Council Bluffs, 63 Iowa, 646, 650, 19 N. W. 807; Cronan v. Municipality No. One, 5 La. Ann. 537.

Stripped of its verbiage, this is the first cause of action disclosed in this complaint: The city of Denver agreed with the Barber Asphalt Paving Company that, if the latter would lay this pavement, it should be paid $38,094.05 therefor, in this way: A certain portion of this sum should be paid in cash, obtained or to be obtained from the sale of the bonds of the city of Denver; $4,169.16 of it should be paid by the street-railway companies which had contracted to pave part of this street at the time and in the manner in which the city directed; and the balance should be paid from moneys to be realized from an assessment to be levied upon the property abutting upon the improvement. The plaintiff in error has paved the street, and the city has received all the benefits of a full performance of the contract. The city has discharged the obligation imposed upon it by the contract, with this exception: that it has not caused, or attempted to cause, the street-railway companies to pay the paving company the $4,169.16 which it contracted that they should pay to it; and it refuses to pay this amount itself, or to take any steps to cause the railway companies to pay it. Why is this not a good cause of action? If the city had failed to issue its bonds, or to pay that part of the price of this improvement which it promised to pay from their proceeds, an action could have been immediately maintained to recover it. If it had failed to levy the assessment upon the lots abutting upon the improvement, or if it had been without the power to make that levy, and it had thus failed to cause that part of the price to be paid by the owners of those lots, the paving company could have recovered it by a direct action against the city. It is not perceived why its liability for that part of the price which it contracted that the railway companies should pay is less direct, primary, or absolute. It is no answer to this proposition to say that, while the city contracted that the railway

companies should pay this $4,169.16, it did not, before the contract was let, provide, by ordinance or otherwise, any method by which the railway companies could be compelled to pay it. It is no defense to an action for the breach of a contract that the party in fault did not make adequate provision for its performance. In Bucroft v. City of Council Bluffs, 63 Iowa, 646, 650, 19 N. W. 807, —a case in which the city had agreed to pay for certain improvements out of a fund to be raised by the levy of assessments upon abutting property, and in which the property owners refused to pay, and the city was without power to enforce payment,—the supreme court of Iowa said:

"It may be said that the defendant did not, in terms, agree to pay, but it contracted, and the work was done for a compensation fixed by the city, and to its satisfaction, under an assumed power that the expense could be assessed as a charge on the abutting owner; and, in substance, both parties contemplated that payment should be made in a certain manner, or out of a designated fund. The plaintiff cannot be so paid. The defendant had no claim nor demand against the abutting owner, nor the power to create the fund, and yet it contracted that it had. * * * Now, when it turns out that there was no such fund, and that the power to create it did not exist, it seems to us that the city should not and cannot escape all liability under the contract; and it has been so held."

In Reilly v. City of Albany, 112 N. Y. 30, 42, 19 N. E. 508, in which the plaintiff's assignor made a contract with the city of Albany to make certain improvements, to be paid for by assessments, and the proceedings leading up to the assessments were declared to be invalid, and the city refused to proceed to make other assessments, when a suit had been brought to recover the contract price of the work directly from the city, the court of appeals said:

"When the contractor had performed his work according to his contract, he had no duty remaining to discharge, and then had a right to rely upon the implied obligation of the city to use with due diligence its own agencies in procuring the means to satisfy his claims. It could not have been supposed that he was not only to earn his compensation, but also to set in motion, and keep in operation, the several agencies of the city government, over whom he had no control, to place in the hands of the city the funds necessary to enable it to pay its obligations. That was a power lodged in the hands of the city, and the clear intent of the contract was that it should exercise it diligently for the purpose of raising the funds necessary to pay for the improvement. For an omission to do so it would become liable to pay such damages as the contractor might suffer by reason of its neglect of duty."

If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds realized or to be realized by assessments upon abutting property, the city is primarily and absolutely liable to pay the contract price itself, if it has no power to make such assessments, or if the assessments it attempts to make are void. City of Memphis v. Brown, 20 Wall. 289, 311, 312; Hitchcock v. Galveston, 96 U. S. 341, 350; Barber Asphalt Paving Co. v. City of Harrisburg, 12 C. C. A. 100, 64 Fed. 283; Bucroft v. City of Council Bluffs, 63 Iowa, 646, 650, 19 N. W. 807; Scofield v. City of Council Bluffs, 68 Iowa, 695, 28 N. W. 20; City

of Chicago v. People, 56 Ill. 327, 333; Maher v. City of Chicago, 38 Ill. 266, 273; Miller v. City of Milwaukee, 14 Wis. 699; Fisher v. City of St. Louis, 44 Mo. 482; Commercial Nat. Bank v. City of Portland, 24 Or. 188, 33 Pac. 532.

If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds to be realized by assessments upon abutting property, and the city has power to make the assessments, but fails to do so, or fails to make valid assessments, and thereby to provide the fund out of which the contractor may receive the price of his labor and materials, the city is primarily and absolutely liable to pay the contract price itself. Bill v. City of Denver, 29 Fed. 344; Argenti v. City of San Francisco, 16 Cal. 256, 281, 283; Beard v. City of Brooklyn, 31 Barb. 142, 150, 151; Commercial Nat. Bank v. City of Portland, 24 Or. 188, 33 Pac. 532; City of Louisville v. Hyatt, 5 B. Mon. 199, 201; City of Leavenworth v. Mills, 6 Kan. 288, 297; Reilly v. City of Albany, 112 N. Y. 30, 42, 19 N. E. 508; Michel v. Police Jury, 9 La. Ann. 67. In cases of this character the city becomes primarily liable, even when the contract expressly provides that the contractor shall accept the assessments in payment of the contract price, and that the city shall not be otherwise liable, whether the assessments are collectible or not. Barber Asphalt Paving Co. v. City of Harrisburg, 12 C. C. A. 100, 64 Fed. 283; City of Chicago v. People, 56 Ill. 327, 334; Commercial Nat. Bank v. City of Portland, 24 Or. 188, 33 Pac. 532. There is no substantial conflict of authority upon these propositions, and the principle they establish is decisive of the question under consideration. This contract was between the city and the paving company. The latter agreed with the city, and not with the railway companies, to grade and pave the street; and the city agreed, and the railway companies did not agree, to pay for these improvements. The paving company has fully performed its contract, and the city has received the benefit of it. It had no contract with the railway companies, it did not pave the street at their request, and its right to recover the contract price is against the party which induced it to make the improvement, and promised that it should be paid for it. If the city had agreed to pay this portion of the contract price in the bonds or the promissory notes or the lands or the services or the material of the railway companies, or any third parties, and had failed to do so, an action against it for the contract price would immediately have arisen. The fact that it agreed to pay this part of the price in the money of these railway companies, and failed to do so, cannot abrogate or modify the principle. By this contract the city became primarily liable to pay that part of the contract price of these improvements which it agreed that the railway companies should pay, when it failed, for an unreasonable length of time after the completion of the contract, to cause the companies to make the payment.

It is, however, insisted that the judgment below ought not to

be reversed, because the charter of the city prohibited its officers from making any contract for, or imposing any liability upon, the city until a definite amount of money had been appropriated to discharge the liability so incurred, and no money was appropriated to discharge the liability incurred by the contract that the railway companies should pay the amount now in question. There are several reasons why this proposition cannot be maintained:

First. The question it attempts to present was not raised by the demurrer, because it does not appear from the complaint that no appropriation was made. Counsel for defendant in error effectually concede this in their brief, for they say:

"We are not contending that the city had no right to make this contract, as it is set out in the complaint, but insist that, in the absence of an appropriation, the city cannot be bound by ordinance, contract, or judicial legislation."

If the contract, as it is set out in the complaint, was within the scope of the powers of the city, and was made by it, as the complaint alleges, then that contract cannot be avoided by the existence or nonexistence of some prerequisite concerning which the complaint is silent. The plaintiff has averred that a contract was made which the city had the power to make. It has pleaded a valid contract. If a previous appropriation was requisite to its validity, the presumption arises, from the execution of the contract, that this appropriation was made. If it was not made, that fact is new matter, which can be brought to the attention of the court by plea or answer only. Chicago, B. & Q. R. Co. v. Otoe Co., 1 Dill. 338, Fed. Cas. No. 2,667, and cases cited; Nash v. City of St. Paul, 11 Minn. 174 (Gil. 110); Boone, Code Pl. § 66. It was undoubtedly within the scope of the general powers of the city to make this contract for paving one of its streets. If the contract was void because the city failed to make the necessary appropriation for it, it was so because the city itself failed to exercise the power which it possessed in a lawful manner, and this was an affirmative defense. The ordinance directing the improvement, the contract let by the board of public works and executed by the city, and the fact that the paving company was permitted to proceed and completely perform it, without objection to its validity, are at least presumptive evidence that the contract was made in a lawful manner, and that the powers of the city were properly exercised. All these facts are disclosed by the complaint, and no fact to avoid their effect is there disclosed. A contract of a corporation, fully executed by its proper officers, by authority of its governing board, and not in itself necessarily beyond the scope of its powers, will, in the absence of pleading and proof to the contrary, be presumed to have been made by lawful authority. Acts done by the corporation which presuppose the existence of other acts to make them legally operative are presumptive proof of the latter. City of Lincoln v. Sun Vapor Street-Light Co., 19 U. S. App. 431, 8 C. C. A. 253, 59 Fed. 756, 760; Lincoln v. Iron Co., 103 U. S. 412, 416; Bank v. Dandridge, 12 Wheat. 64, 70; Omaha Bridge Cases, 10 U. S.

App. 98, 189, 2 C. C. A. 174, 240, 51 Fed. 309, and cases cited; Union Water Co. v. Murphy's Flat Fluming Co., 22 Cal. 620, 629.

Second. The charter of the city of Denver did not prohibit its officers from making the contract here in question until after a definite amount of money had been appropriated to discharge the liability so incurred. The law incorporating the city of Denver, and its amendments, was reduced into one act by the legislature of Colorado in 1885; and it appears in the Session Laws of that year, between pages 74 and 124. It was amended in 1889, and those amendments appear in the Session Laws of that year, between pages 124 and 149. It was again amended in 1891, and those amendments appear in the Session Laws of that year, between page 75 and page 81. In 1892, when the contract here in question was made, the provisions of this charter that are material to the questions now under consideration were these:

Section 20 of article 2 vested in the city council the general management and control of all the property of the corporation, real, personal, and mixed, and gave it authority to open, alter, abolish, widen, extend, establish, grade, pave, and otherwise improve the streets of the city. Sess. Laws Colo. 1885, p. 81.

Section 6 of article 6 of this charter, which is entitled "Finance and Taxation," provided that during the last quarter of each calendar year the officers at the head of the different departments of the city government should make detailed statements of the probable expenses of their respective departments for the ensuing year, that the mayor should thereupon present to the city council a statement of the money necessary to defray the expenses of the city government for the next year, and that as soon thereafter as possible the city council should pass an annual appropriation ordinance for the next calendar year, appropriating certain definite sums of money to defray the expenses incident to each department of the city government, based upon the estimate of the mayor. Sess. Laws Colo. 1889, p. 135.

Section 7 of that article provided that the board of public works and the city council might contract an indebtedness to the amount of $400,000, to pay for certain new improvements, including the construction of public buildings, public sewers, viaducts, reservoirs, and to pay the city's proportion of grading, paving, and curbing streets. Sess. Laws Colo. 1889, p. 136.

Section 8 of article 6, which is the section on which the contention of counsel for defendant in error is based, provided:

"The city council shall not order the payment of any money, for any purpose whatever, in excess of the amount appropriated for the current year, and, at the time of said order, remaining unexpended in the appropriation of the particular class or department to which such expenditures belong. Neither the city council nor any officer of the city shall have the authority to make any contract, or do anything binding the city, or imposing upon the city any liability to pay money, until a definite amount of money shall have been appropriated for the liquidation of all pecuniary liability under said contract, or in consequence thereof, and the amount of said appropriation shall be the maximum limit of the liability of the city under any such contract, or in consequence thereof; said contract to be ab initio, null and void, as to

the city, for any other or further liability; \* \* \* provided, that the provisions of this section shall not apply to or limit the authority conferred by the preceding section 7." Sess. Laws Colo. 1885, pp. 106, 107.

Section 3 of article 10, which is entitled "Streets and Sidewalks," provided that whenever the owners of the majority of the lots abutting on a street or alley should petition the city council for the paving or grading thereof, or whenever the board of public works should order the same, and should notify the city council, such paving or grading should be ordered by ordinance, and two-thirds of the total expense thereof, excluding the intersection of streets and alleys, should be assessed upon the property abutting upon the same, and one-third of such expense on such frontage, and all the expense at street and alley intersections, should be borne by the city. It also provided that:

"Warrants in payment of two-thirds of the total cost, including the incidentals and interest of the grading or paving, or both, along any property frontage, which may include curbing, storm sewers as above indicated, so ordered, shall be issued in the manner provided by ordinance, and shall be payable out of the moneys collected from the assessments upon the lots abutting upon such improvement. \* \* \* The amount in payment of the one-third of the total cost of such improvement to be borne by the city shall be in cash, and shall be payable as provided by ordinance." Sess. Laws Colo. 1889, pp. 141, 142.

Section 6 of an act to amend the city charter of Denver, approved April 11, 1891, provided:

"All contracts for the construction, reconstruction or aiding in the construction of district sewers, public sewers, storm sewers, bridges, viaducts, sidewalks, curbing, street grading and paving, with all their appurtenances shall be hereafter let by the mayor with the approval of the board of public works, without any action on the part of the city council, anything in this act or the acts to which this act is amendatory to the contrary nowithstanding." Sess. Laws Colo. 1891, p. 78.

In the month of April, 1891, the city council of Denver passed an ordinance, pursuant to the authority vested in it by section 7, art. 6, supra, which provided that 400 bonds of the city of Denver, of $1,000 each, should be issued, upon the approval of a majority of the members of the board of public works of the city, for the purpose of paying the city's proportion of grading, paving, curbing, and construction of storm sewers, with their manholes, inlets, and appurtenances, and for paying for the other improvements mentioned in section 7; that "the said board of public works shall have full and absolute authority to negotiate the sale of said bonds when issued, and shall have full, complete and exclusive authority to expend for and in behalf of said city such sums of money as shall from time to time be realized from the sale of the bonds aforesaid for any or all of the said purposes, viz." for constructing public buildings, viaducts, reservoirs, etc., and "for paying the city's proportion of grading, paving, curbing and construction of storm sewers with their manholes, inlets and appurtenances."

A careful examination of this legislation discloses the fact that the method of conducting the general administration of the affairs

of the city, of making the contracts for its current wants, and the appropriations for its current expenses, which were to be paid for by the general tax levy of the coming year, was prescribed by sections 6 and 8 of article 6 of this charter. By section 6 the officers at the head of the different departments of the city government were required, during the last quarter of the year, to make detailed statements of the probable expenses to be incurred in their respective departments, and thereupon the city council was required to pass an annual appropriation ordinance "providing for the appropriation of certain definite sums of money to defray the expenses incident to each department of the city government" for the next calendar year. By section 8 the city council was prohibited from ordering the payment of any money in excess of the amount appropriated by this annual appropriation ordinance, and remaining unexpended in the appropriation of the particular class or department to which such expenditure belonged, at the time the order was made, and it was further provided that neither the city council nor any officer should have authority to make any contract binding the city until a definite amount of money had been appropriated to liquidate the liability incurred thereby. The last clause of that section, however, expressly provides that the provisions of the section shall "not apply to or limit the authority conferred by the preceding section 7." Now, section 7 prescribed the method, and gave to the board of public works and to the city council the power, to raise and expend $400,000 to grade, pave, and curb streets, to construct sewers, to erect public buildings, to purchase and improve parks, to build viaducts, and to make other original improvements, which were not to be paid for by the general tax levy for the coming year. The contract now in question was for grading, paving, and curbing a street; it was an original improvement, and not a current expense of the city; it was to be paid for from local assessments and the proceeds of the bonds authorized to be issued by section 7, and not by general taxation; and it was made pursuant to the general authority to grade and improve streets, and the authority granted by section 7, supra, and section 6 of the amendment of 1891. The conclusion is irresistibly forced upon our minds, by this review of the provisions of this charter, that this and like contracts for the construction of buildings, sewers, viaducts, and sidewalks, and for grading and paving streets, that were not a part of the current expenses of the city, and were not to be paid for by the general tax levy, but through the expenditure of the funds authorized to be raised by section 7, are expressly excepted from the restrictions and prohibitions of section 8 by the last clause of that section. We are unable to bring ourselves to the view that the legislature intended that the city council should include in its annual appropriation ordinance an appropriation for every original improvement of this nature that might be made, under section 7 and the subsequent legislation, during the year following the passage of the appropriation, and that it was forbidden to order the payment for any such im-

provement not included in such appropriation. Such a construction of this charter would require of a board of public works and a city council in a growing city a degree of foreknowledge in excess of that possessed by the legislature itself. How could they foresee what streets the owners of abutting property would petition to have paved or graded six months or a year before the petitions were drawn? The express exception at the close of section 8, however, seems to us too plain and unambiguous to receive much aid from argument or construction. When the language of a statute is plain, it should be held to mean what it clearly expresses, and no room is left for construction. Railway Co. v. Sage (decided by this court at the present term) 17 C. C. A. 558, 71 Fed. 40; Knox Co. v. Morton, 15 C. C. A. 671, 68 Fed. 787, 789; U. S. v. Fisher, 2 Cranch, 358, 399; Railway Co. v. Phelps, 137 U. S. 528, 536, 11 Sup. Ct. 168.

If any doubt had arisen as to the intention of the legislature in enacting the exception at the close of section 8, the subsequent action of the legislature and the city council would remove it from our minds. Section 7, as it now stands, was enacted in 1889. In 1891 the legislature of Colorado provided that all contracts of the city of Denver for the construction of sewers, bridges, viaducts, and sidewalks, and for curbing, grading, and paving streets, should be thereafter "let by the mayor with the approval of the board of public works, without any action on the part of the city council, anything in this act or the acts to which this act is amendatory to the contrary notwithstanding." Sess. Laws Colo. 1891, p. 78, § 6. If the mayor and board of public works were authorized to let this contract without any action of the council, they were certainly authorized to let it without an appropriation by the council. The city council so construed this charter, and recognized and ratified this power in the board of public works, by the ordinance which it passed in April, 1891. It provided by that ordinance that the $400,000 of bonds authorized by section 7 should be issued "upon the approval of a majority of the members of the board of public works of said city, at a session thereof"; that that board should have full authority to negotiate their sale, and "full, complete and exclusive authority to expend for and in behalf of said city such sums of money as shall from time to time be realized from the sale of the bonds aforesaid," for the purposes specified in section 7,—one of which was, as we have seen, to pay the city's proportion of grading, paving, and curbing the streets.

The result is that a contract for grading, paving, and curbing a street of the city of Denver is not subject to the restrictions and prohibitions of section 8, art. 6, of the charter of the city, but is expressly excepted therefrom by the last clause of that section, and by the provisions of section 6 of the act of 1891, amending the charter, and the previous appropriation of a specific amount to pay the liability incurred by such a contract is not essential to its validity. The case of Smith Canal or Ditch Co. v. City of Denver (Colo. Sup.) 36 Pac. 844, which was cited and relied upon by counsel for defendant in error, is not in conflict with this view. That was an action to recover upon

an implied contract for the value of water furnished to the city of Denver. It was an action upon a supposed liability incurred in the usual course of the administration of the city, under sections 6 and 8 of article 6 of the charter, and to be paid for, if at all, from the funds derived from the general tax levy of the year in which the cause of action arose; and the supreme court of Colorado held that the contract was void, because no previous appropriation had been made for it. The difference between the contract in question in that case and that here in issue is that the former was clearly within the restrictions and prohibitions of section 8, and the latter was as clearly excepted from them by the last clause of that section, and by section 6 of the act of 1891. The supreme court of Colorado, in its opinion in that case, carefully recognized this distinction. It declared that the complaint in that case did not "allege such facts as bring the case within any of the provisos mentioned or referred to in said section 8." The complaint in the case at bar does allege such facts as bring it within the exception contained in the last proviso of section 8, and such facts as take it out from under the rule announced in Smith Canal or Ditch Co. v. City of Denver, supra. The judgment below must be reversed, with costs, and the case must be remanded, with instructions to overrule the demurrer and permit the defendant to answer, and it is so ordered.

CALDWELL, Circuit Judge (dissenting). In the opinion of the majority it is said:

"It is, however, insisted that the judgment below ought not to be reversed, because the charter of the city prohibited its officers from making any contract for or imposing any liability upon the city until a definite amount of money had been appropriated to discharge the liability so incurred, and no money was appropriated to discharge the liability incurred by the contract that the railway companies should pay the amount now in question. There are several reasons why this proposition cannot be maintained: First. The question it attempts to present was not raised by the demurrer, because it does not appear from the complaint that no appropriation was made. Counsel for defendant in error effectually concede this in their brief, for they say: 'We are not contending that the city had no right to make this contract, as it is set out in the complaint, but insist that, in the absence of an appropriation, the city cannot be bound by ordinance, contract, or judicial legislation.' If the contract, as it is set out in the complaint, was within the scope of the powers of the city, and was made by it, as the complaint alleges, then that contract cannot be avoided by the existence or nonexistence of some prerequisite concerning which the complaint is silent. The plaintiff has averred that a contract was made which the city had the power to make. It has pleaded a valid contract. If a previous appropriation was requisite to its validity, the presumption arises from the execution of the contract that this appropriation was made. If it was not made, that fact is new matter, which can be brought to the attention of the court by plea or answer only. Chicago, B. & Q. R. Co. v. Otoe Co., 1 Dill. 338, Fed. Cas. No. 2,667, and cases cited; Nash v. City of St. Paul, 11 Minn. 174 (Gil. 110); Boone, Code Pl. § 66."

The court here decides two things: First, that the question whether the charter of the city prohibited its officers from incurring the liabilities sought to be imposed upon it by this suit until a definite amount of money had been appropriated to discharge the liability so incurred, was not raised by the demurrer; and, second, that "that fact is new matter, which can be brought to the attention of the court

by plea or answer only." It is obvious, therefore, that all that is said upon this question—which, it is distinctly decided, is not raised by the demurrer, and "is new matter, which can be raised by plea or answer only"—is obiter dictum, and is not binding on this or any other court. It is the ruling of the lower court on the demurrer, and nothing else, that is before this court for review; and a question not raised by that demurrer is not before us, and cannot be considered judicially. Whatever may be said on the subject cannot be regarded as a judicial utterance. Counsel for the plaintiff in error, in their brief, say:

"This technical defense, this new matter which the city contends goes to the validity of the contracts themselves, ought not to be injected into this record by the instrumentality of a demurrer; but the defendant in error, if it relies upon such a defense, should be relegated to the proper legal methods of raising such defense. It should be sent back to the court below, with instructions that, if it has a defense of that character, it can be interposed by answer, and by no other method; giving the plaintiff in error, when such defense is properly raised, the opportunity of replying thereto, and setting up the facts which may go to defeat such a defense."

This is undoubtedly a correct statement of the proper practice to be pursued in this case. It is obvious that the learned counsel for the plaintiff in error did not conceive it possible that this court could or would pass upon the validity of the contract after it was decided that the demurrer did not raise that question. Not until all the facts having relation to the validity of the contract are brought upon the record can its validity be passed upon. But the majority of the court, while adopting the view of the counsel for the plaintiff in error, viz. that the demurrer does not raise the question of the validity of the contract, nevertheless proceed to decide that very question. This question, which the defendant in error mistakenly supposed it had raised by its demurrer, is indeed the only question in the case, and is the only one discussed in the brief of the counsel for the defendant in error. That portion of the opinion of the majority which precedes the paragraph quoted discusses questions which are not controverted, but which do not touch the real point intended to be raised by the demurrer, namely, the proper construction of the city's charter and of ordinances, and the validity of the contract thereunder. Moreover, all that is said on this subject is not only obiter, but very much of it is based on matters entirely outside of the record. Ordinances and other facts are referred to which are not made part of or referred to in the complaint, and are not found in the record, but appear only in the brief of the plaintiff in error. It will be time enough to discuss the law upon this subject when the court has a record before it which raises the question, and presents the facts necessary to its correct decision. If the opinions of appellate courts are to be respected and have any weight, they must conform their utterances to the questions properly brought before them, and to the facts appearing in the record. Proper respect for this rule, and a due regard for the rights of the parties in this case, require that the court should say no more than that this question is not raised by the demurrer, and cannot, therefore, be considered.