## SPENCER v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. March 24, 1909.)

Nos. 2,684, 2,812.

1. JURY (§ 33*)—SELECTION—FEDERAL COURTS—DIVISION OF DISTRICT.

Act Cong. July 20, 1882, c. 312, 22 Stat. 172 (U. S. Comp. St. 1901, p. 349), divided Iowa into the Northern and Southern judicial districts, the Southern being in turn divided into the Eastern, Central, and Western divisions; and Act June 1, 1900, c. 601, 31 Stat. 249 (U. S. Comp. St. 1901, p. 353), created an additional or Southern division in the Southern district. Section 5 declared that all grand and petit jurors for the Southern division should be selected from citizens residing therein; no such provision being made, however, with reference to the other divisions of such district. *Held*, that such acts did not require that jurors drawn for service in the Central division should be citizens residing in such division, it being sufficient that they resided within the district.

[Ed. Note.—For other cases, see Jury, Dec. Dig. § 33.*]

2. STATUTES (§ 220*)—CONSTRUCTION—IMPLIED LEGISLATIVE INTERPRETATION.

The opinion of legislative bodies concerning an existing ambiguous or uncertain law, manifested by or implied from the passage of subsequent acts relating to the same subject, is some, though not controlling, evidence of the true meaning of the original law.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 298; Dec. Dig. § 220.*]

3. JURY (§ 33*)—"JURORS."

The word "jurors" as used in Rev. St. § 802 (U. S. Comp. St. 1901, p. 625), declaring that jurors shall be returned from such parts of the district from time to time as the court shall direct, etc., embraced both grand and petit jurors.

[Ed. Note.—For other cases, see Jury, Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 4, pp. 3887–3888.]

4. JURY (§ 33*)—TRIAL BY JURY—RESIDENCE OF JURORS—STATUTES.

Under Const. U. S. Amend. art. 6, providing that accused shall enjoy the right to a speedy and public trial by an impartial jury of the state or district where the crime shall have been committed, which district shall have been previously ascertained by law, Rev. St. § 802 (U. S. Comp. St. 1901, p. 625), providing that jurors shall be returned from such parts of the district as the court shall direct so as to be more favorable to an impartial trial, was not unconstitutional in so far as it permitted the summoning of jurors from parts of the district not containing the county in which the crime was committed, as depriving accused of a constitutional right to be tried by an impartial jury of the district wherein the crime was committed.

[Ed. Note.—For other cases, see Jury, Dec. Dig. § 33.*

Right to trial by jury in federal court, see notes to O'Connell v. Reed, 5 C. C. A. 603; Vany v. Peirce, 26 C. C. A. 528.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. EMBEZZLEMENT (§ 20*)—MONEY OF BANK—COLLECTION BY AGENT.
Accused's duty was to take drafts or other items received by a national bank by which he was employed from its patrons for collection, present them to the drawees or others liable thereon, receive the money due, and return it to the bank. He, however, reported a less amount collected than he actually received, and converted the difference. *Held*, that in making the collection he acted as the bank's agent, and that the money, while in his possession and before it had been actually deposited in the bank, belonged to it, and that he was therefore properly convicted of embezzling the same.

[Ed. Note.—For other cases, see Embezzlement, Cent. Dig. §§ 22, 23; Dec. Dig. § 20.*]

·In Error to the District Court of the United States for the Southern District of Iowa.

Williamson S. Summers and Charles S. Bradshaw, for plaintiff in error.

Marcellus L. Temple, for the United States.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. Two indictments were found against Carl M. Spencer, the plaintiff in error, in the District Court of the Central Division of the Southern District of Iowa—one charging him in 10 counts with making that number of false entries in one of the books of the Des Moines National Bank of which he was a clerk, with the intent of injuring and defrauding the bank; the other charging him in 5 counts with that number of separate embezzlements of the funds of the bank; each in violation of section 5209, Rev. St. (U. S. Comp. St. 1901, p. 3497). The cases were separately tried, and the defendant was found guilty on each and all the counts of both indictments, and judgment was pronounced against him accordingly. The present writs of error are prosecuted to secure a reversal of these judgments.

In the first case, involving the false entries, no other question is presented for our consideration except the legality of the constitution of the grand and petit juries which indicted and tried the defendant. That question, and also the question whether the money alleged to have been embezzled was the money and property of the bank as charged in the indictment, are the only questions presented in the second case. These cases were argued and submitted to the court together.

1. Touching the first question common to both cases, the only pertinent facts are that the jurors were drawn from the body of the Southern district of Iowa, and not exclusively from the Central division of that district where the trial occurred; and also that by an order of court before then made and applicable to all the divisions of the Southern district no citizen of the county in which the court should be held could be drawn for service on either the grand or petit jury, and as a result of that order no citizen of Polk county, the same being the county in which the District Court for the Central division was held, was permitted to serve in this case. Did either of these facts invalidate the panels?

By Act July 20, 1882, c. 312, 22 Stat. 172 (U. S. Comp. St. 1901, p. 349), the state of Iowa, which before then had constituted only one judicial district, divided into four divisions, was divided into two judicial districts—the Northern and Southern. The same act divided the Southern district "for the purpose of holding terms of court" into three divisions, called the Eastern, Central, and Western divisions, and designated the counties of the state which should constitute each one of these divisions. A later act approved June 1, 1900 (Act June 1, 1900, c. 601, 31 Stat. 249 [U. S. Comp. St. 1901, p. 353]), carved out of the counties composing the three divisions an additional division denominated the "Southern Division of the Southern District." By section 5 of the latter named act it was provided:

"That all the grand jurors and all jurors for the trial of civil and criminal causes in the division hereby created [the Southern] shall be selected from citizens residing in the division created by this act."

No such provision is found in the act of 1882 creating the Eastern, Central, and Western divisions.

Defendant's contention is that the jurors should have been drawn exclusively from the Central division of the district. This contention made under similar statutes was considered by us in the light of all the authorities in the recent case of Clement v. United States, 149 Fed. 305, 79 C. C. A. 243, and was disapproved. We there held that, although Congress subdivided the one judicial district of Minnesota which had been previously ascertained by law into six divisions "for the purpose of holding terms of court," those divisions were not thereby established as separate judicial districts so as to require a grand or petit jury to be drawn from each division for the accusation and trial of offenses originating therein. We see no reason for departing from the conclusion then reached, and, for the reasons there stated, we hold that the defendant was lawfully indicted and tried by jurors drawn from the body of the Southern district of Iowa.

2. It is next argued that, as section 5 of the act of 1900 creating a Southern division of the Southern district contains a provision that all grand and petit jurors in that division should be drawn from citizens resident therein, it amounts to a legislative declaration that as the residents of the Central division are disqualified from service on the juries in the Southern division, therefore the reverse is true, and no resident of the Southern or any other division is qualified to sit as a grand or petit juror in the Central division. We fail to appreciate the force of this argument. If any implication on this subject is manifest by section 5, it would seem to be exactly the contrary. If the law had previously been as now contended by defendant's counsel, there was no occasion for the enactment of section 5, as, even without it, only residents of the Southern division would be qualified to serve as jurors in that division. Why, therefore, did Congress make the special provision in section 5? Obviously because it recognized the general rule to be as indicated by us, and wished to depart from that rule and make an exception with respect to this particular division, and deemed it necessary to do so in express terms in order to accomplish its purpose.

The opinion of legislative bodies concerning an existing ambiguous or uncertain law manifested by or implied from the passage of subsequent acts relating to the same subject is some, though not controlling, evidence of the true meaning of the original law.   License Tax Cases, 72 U. S. 462, 473, 18 L. Ed. 497; Davis v. Gray, 83 U. S. 203, 223, 21 L. Ed. 447; Matthews v. McStea, 91 U. S. 7, 13, 23 L. Ed. 188; Farmers', etc., Nat. Bank v. Dearing, 91 U. S. 29, 36, 23 L. Ed. 196; Pompton v. Cooper Union, 101 U. S. 196, 201, 25 L. Ed. 803; Fussell v. Gregg, 113 U. S. 550, 561, 5 Sup. Ct. 631, 28 L. Ed. 993; Sarlls v. United States, 152 U. S. 570, 577, 14 Sup. Ct. 720, 38 L. Ed. 556; Rosencrans v. United States, 165 U. S. 257, 262, 17 Sup. Ct. 302, 41 L. Ed. 708; Barber Asphalt Paving Co. v. City of Denver, 72 Fed. 336, 345, 19 C. C. A. 139.

3. Did the order of court excluding residents of Polk county from service on the grand or petit jury invalidate the panels?  This order was made pursuant to the provision of section 802, Rev. St. (U. S. Comp. St. 1901, p. 625), that:

"Jurors shall be returned from such parts of the district from time to time as the court shall direct so as to be most favorable to an impartial trial and so as not to incur an unnecessary expense or to unduly burden the citizens of any part of such district with such service."

This statute, by employing the comprehensive term "jurors," embraces both grand and petit jurors (United States v. Stowell, 2 Curt. 153, Fed. Cas. No. 16,409; Agnew v. United States, 165 U. S. 36, 44, 17 Sup. Ct. 235, 41 L. Ed. 624), and in terms authorized the order in question.  But the contention is that the statute violates the constitutional right of the accused to be tried by an impartial jury of the district wherein the crime was committed; in other words, that the vicinage from which the accused was entitled to have the jurors summoned embraced Polk county, and that the order in question deprived him of the right to which he was so entitled.  We think this position is untenable.  The Constitution left it to Congress to determine the districts from which the required impartial jury should be summoned.

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law."  Article 6 of Amendments.

Obedient to this constitutional mandate, Congress created a judicial district known as the "Southern District of Iowa," and thereby ascertained and fixed the maximum limits of the territory from which a jury might be summoned to try cases originating therein.

The large number of counties which compose most judicial districts render it physically impossible to secure one grand juror, and very difficult to secure one petit juror, from each county of each district; hence, in the ordinary administration of the law governing the selection of jurors (section 800 et seq., Rev. St. [U. S. Comp. St. 1901, p. 623]), it would be impossible to secure a jury composed of one or more members from each county of a district.  But in addition to this suggestion of convenience, it is apparent that one of the main purposes of the constitutional provision was to secure a trial by an im-

partial jury. The details of working out this main purpose were necessarily left to Congress. In the performance of this delegated function section 802 was early in our history (September 24, 1789) enacted. Its language discloses that its principal object was to secure the "speedy trial by an impartial jury" guaranteed by the Constitution. It therefore comes fairly within the powers conferred upon Congress, or within those necessarily implied, and is rather in execution than in derogation of the organic law.

The views just expressed have received judicial sanction in the following cases: United States v. Ayres (D. C.) 46 Fed. 651; United States v. Greene (D. C.) 113 Fed. 683; United States v. Peuschel (D. C.) 116 Fed. 642.

4. Did the money appropriated by the defendant belong to the bank? Defendant's duty was to take drafts or other items received by the bank from its patrons for collection, present them in person to the drawees or others liable on them, receive the money due on them, and return it to the bank. His method of doing it was to report to his superiors in the bank a less amount collected than he actually received, and convert the difference to his own use. He necessarily had made the collection and had taken the money into his own possession before the act of conversion took place. In making the collection he was clearly acting as agent for the bank, and his duty as such agent was to report and deliver the full amount collected to his principal. As between him and the bank the money undoubtedly belonged to the latter, and any appropriation of it was the appropriation of the money of the bank.

The conclusion just stated seems self-evident, and would not be noticed further except for the contention of defendant's counsel that title was not vested in the bank until the actual deposit in the bank of the amount collected by defendant. Some cases concerning title to money as between a depositor and the bank are called to our attention. They generally have arisen in attempts to follow trust funds where the circumstances connected with their deposit were determinative of the rights of the parties, and in them expressions are found to the effect that the relation of debtor and creditor does not arise until money is actually deposited over the counter, or the deposit is not complete until the money is actually delivered at the bank with intention to make a deposit. These cases are cited and referred to in Zane on Banks & Banking, §§ 130, 131. This case, however, does not concern the title or ownership of money as between the owner of the items sent for collection and the bank. Their relationship may be that of debtor and creditor, trustee and cestui que trust, bailor and bailee, according to instructions given at the time, custom and usage of business, or other facts and circumstances attending each particular transaction. We shall accordingly not undertake to discuss the law applicable to all such situations.

The Supreme Court of the United States in the leading case of Exchange Nat. Bank v. Third Nat. Bank, 112 U. S. 276, 5 Sup. Ct. 141, 28 L. Ed. 722, contrary to the rule prevailing in many states, held that when banks receiving items for collection forward them to their cor-

respondents to be collected from a debtor residing at a distance, in the absence of any contrary understanding, they make the correspondent their own agent and become liable for his conduct. Much more would this be true between the bank and its clerk or agent employed by it to make collections. The bank is responsible for the acts of its agent, and cannot escape liability to its patrons for the money appropriated by the agent. Clearly, then, as between the bank and the agent, the money belonged to the former, and the agent cannot be heard to say that the money which his principal authorized him to collect for its account belonged to any one but his principal.

The judgment in both these cases must be affirmed.