FREESE, Appellant, v. CITY OF PIERRE, Respondent.

(158 N. W. 1013.)

(File No. 3886.  Opinion filed July 29, 1916.)

1.  **Municipal Corporations—Street Improvements—Special Assessments—Contract, Void Assessment Under, Liability of City—Statute.**

    In absence of special provision to the contrary, a municipal corporation impliedly contracts to cause a valid assessment to be made when it contracts for a street improvement to be paid for by special assessment; and when the assessment is invalid because of some defect in the proceedings chargeable to it, the municipal corporation is holden to the contractors. So held, construing Pol. Code, Sec. 1229, empowering municipal corporations to contract for street grading, and for special assessments to pay for same; and the city was liable to the contractor thereunder for the unpaid balance due him for grading certain streets and alleys.

2.  **Same—Street Improvements—Void Special Assessments—Cost of Filling Not Done Under Contract—Reassessment—Constitutionality—Contractor's Relation to Assessment Proceedings.**

    An original assessment for street improvements was declared void as in violation of the due process of law clause of the Federal and State Constitutions, because it included cost of filling streets other than that done under contract. **Held,** that a valid assessment, which would include the cost of such filling, cannot be made; and a contractor's remedy under a reassessment would in such case be inadequate, under a statute which gives the contractor no interest in the special assessments, no lien upon the property assessed, and no voice in the assessment proceedings.

3.  **Same—Special Assessments on Street Improvements—Reassessment as Condition Precedent to Suit Against City.**

    Where a special assessment to pay for street grading is declared void and a valid reassessment will be inadequate to pay the cost of the grading, the contractor need not seek such reassessment before bringing suit against the city for payment therefor.

4.  **Same—Invalid Special Assessment—Purchaser at Assessment Sale—Liability of City to Contractor—Purchaser of Sale Certificate—Statute.**

    Under Pol. Code, Sec. 1319, providing that, where a special assessment for local improvement is judicially set aside, the purchaser of sale certificates at special assessment sale shall be reimbursed for the amount paid with interest, held, that

a contractor to whom the city, bidder at the sales, assigns such certificates, may recover from the city; and this without regard to the city's claim that he took the certificates in full settlement of the contract; the contractor occupying the same position with reference to the certificates as a purchaser at treasurer's sale would have occupied.

5. **Same—Special Street Assessments—Reassessments for Street Fills—Findings of Fact—Insufficiency of Evidence.**

Where there were findings of fact that it was necessary to grade M. Street, (in what was known as "Hill" district) and to fill certain streets (in what was known as the "Flat" district), and that of a total amount of earth excavated in the "Hill" district only a specified part thereof was used to fill streets covered by the assessment in the "Flat" district, and that the excess of said excavated dirt was dumped by the city into a certain alley and on the cross street approaches to some of the streets graded under the proceeding; it appearing by the findings that it was necessary to grade M. street to obtain earth for the "Flat" when, without such earth, there was still an excess of earth beyond what was necessary to fill the streets; it appearing from the evidence and findings that the cost of excavating M street above the amount assessed against the property abuting on said street was erroneously charged to the "Hill" district, and that the cost of the overhaul was erroneously charged to the "Flat" district, and it further appearing that the assessment against the property abutting on M street has been paid so that there is now no recourse against said property for any further amount, held, that said findings are not supported by the evidence.

6. **Same—Special Street Grade Assessment—Reassessments—Fill in "Flat" District, Excavation in "Hill" District—Respective Apportionments of Cost—Equitable Though Invalid.**

In grading two districts of a city including a "Hill" district and a "Flat" district, where the city council apportioned the cost of the entire improvement between the two districts on the basis of 20-52 and 32-52 respectively, held, that such apportionment, though beyond the power of city council, was equitable for the purpose of a reassessment by the trial court.

7. **Same—Special Street Grade Assessments—Apportionment of Cost—Statute.**

Under Laws 1913, Chap. 20, Sec. 4, authorizing the court to make reassessments when special assessments for local improvements are set aside for irregularity or for declared voidness of the proceedings, and requiring that "the true and just amount of such assessments due upon such property must be ascertained, and judgment rendered and given therefor, held, that a reassessment which charged each front foot of abutting

property in that part of the graded area designated as the "Hill" district and in another part known as the "Flat" district, the same amount, instead of basing the assessment on the amount of the excavation, which at different places, including streets in both the "Hill" and the "Flat" districts, was of different depths and of different widths, was improper and invalid, as not representing the true and just amount due.

Appeal from Circuit Court, Hughes County. Hon. JOHN F. HUGHES, Judge.

Action by John M. Freese against the city of Pierre, S. D., seeking, among other relief, to have certain street grade special assessments adjudicated upon as to their validity, for a reassessment, if invalid, and for alternative relief by way of judgment against the city for the unpaid cost of grading, if reassessment cannot be made. From a judgment for plaintiff providing for a reassessment, but containing no provision for deficiency judgment in plaintiff's favor, and from an order denying a new trial, plaintiff appeals. Reversed and remanded with directions.

*Boyce, Warren & Fairbank,* for Appellant.

*Karl Goldsmith,* for Respondent.

(1) To point one of the opinion, Appellant submitted that: This statute does not give the contractor any interest in the assessment, nor any lien on the property to be assessed. The power of the city to grade its streets is not derived from this statute, but is found in the general provisions of the city charter. This statute is for the benefit of the city only, and to enable it to raise a special fund out of which to pay the contract price, so as to avoid the necessity of making payment out of its general revenues. That there is no agreement in the contract in question limiting the liability of the city to the proceeds of the special assessment, or providing that the contractor is to receive payment only out of the proceeds of the special assessment, or that the contractor is to assume the risk of collection of the assessment and that the city shall in no event be liable for the collection of the assessment; and cited: Pol. Code, Secs. 1305, 1317, 1318, Rogers v. Omaha, 117 N. W. 120, 107 N. W. 214; Barber Asphalt Paving Co. v. Denver, 19 C. C. A. 142; Becroft v. Council Bluffs, 19 N. W. 807 (Ia.); Hitchcock v. Galveston, 96 U. S. 350; Terrell v. Paducah, 92 S. W. 310, 5 L. R. A. (N. S.) 289 (Ky.) Maher v. Chicago, 38 Ill. 270;

Gilchrest & Co. v. Des Moines, 131 N. W. 776 (Ia.); Ward v. City of Lincoln, 128 N. W. 24, 32 L. R. A. (N. S.) 163; Scofield v. Council Bluffs, 28 N. W. 20 (Ia.); Fort Dodge Electric, etc., Co. v. Fort Dodge, 89 N. W. 7 (Ia.); Iowa Pipe & Tile Co. v. Callanan, 67 L. R. A. 408, 106 Am. St. 311, 101 N. W. 141, 3 Ann. Cas. 7; Barber Asphalt Paving Co. v. Harrisburg, 29 L. R. A. 401, 12 C. C. A. 100; Dale v. City of Scranton, 80 Atl. 1110 (Pa.); Dime Deposit, etc., Bank v. City of Scranton, 57 Atl. 770; Commercial National Bank v. Portland, 33 Pac. 522 (Ore.); O'Neil v. City of Portland, 113 Pac. 655; District of Columbia v. Lyon, 40 L. Ed. 670 (U. S.); Pine Tree Lumber Co. v. City of Fargo, 96 N. W. 357 (N. D.)

Respondent submitted that: It is the duty of the city to make a valid assessment, and if it fails to do so, is liable as upon an implied agreement to give the contractor a valid certificate. And the contractor may compel the city to make a re-assessment where it is permitted by statute to be made; and cited: Hamilton on Special Assessments, Sec. 462; Foster v. City of Alton, 173 Ill. 587, 51 N. E. 76; Morgan Park v. Graham, 136 Ill. 515, 26 N. E. 1089.

(2) Under point two of the opinion, Appellant submitted that: The evidence, as well as the findings, show a misappropriation of the funds derived from this assessment by the city council, and that the city has been guilty of such conduct toward this plaintiff, and toward the property owners, that it is impossible to make any re-assessment whatever, and that the city is liable to plaintiff generally, as for breach of contract, out of its general funds, for the balance due on the contract.

(3) Under point three of the opinion, Respondent submitted that: Under the reassessment made by the court, the appellant is receiving exactly what he contracted for, and being paid for the work done in the manner in which he agreed to accept payment. The city contracted, not that it would produce the money to pay the contract price, but that it would give a valid assessment, which it has done under the decree of the court in this case.

(4) Under point four of the opinion, Respondent submitted that: The city was not a purchaser at the assessment sale. The evidence shows that, there being no other bidders, the special

assessment certificates were taken in the name of the city, and, as required by its contract, it immediately assigned the same to appellant, who paid nothing to the city for them; that he accepted them without any consideration except the terms of the contract.

(5) Under point five of the opinion, Respondent submitted that: Under the express terms of the contract, material excavated from the streets within the limits of the contract and not needed to fill other streets within the same limits, was to be placed as directed by the City Engineer, and to be the property of the city. When Fanebust & Sons bid on this contract they took into consideration the fills so made by the property owners and by Biwer. The grading of the Hill and the Flat together was the cheapest and most reasonable way of grading the several streets.

(7) Under point seven of the opinion, Respondent submitted that: The reassessment made under Chapter 20, Laws 1913, by the lower court, was valid and legal. That under that law the court had the right to reassess each lot accordingly as such lot was benefitted, not exceeding the amount of the original assessment, together with interest, and that the evidence shows that all of the lots involved in this action were benefited to a sum in excess of the amount of the reassessment.

GATES, J. In June, 1907, the city of Pierre adopted one resolution for the grading of 8 streets in what is called the "flat" district, which provided that the cost should be borne by special assessment on the front-foot basis. One of these streets was 100 feet in width, the remaining 7 were 80 feet. Each of these streets required a "fill" in varying amounts. In April, 1908, said city council adopted one further resolution for the grading of 10 streets in what is called the "hill" district, which likewise provided for an assessment on the front-foot basis. The streets were of varying widths—40, 66, 73, 75, and 80 feet. All of these streets required excavation in varying depths. In August, 1908, one contract for grading, under both resolutions, was entered into by the city and Fanebust & Son. The contract provided that the city would pay for the work according to the specifications—

"same to be paid by special assessment upon the lots and parcels of ground fronting and abounding upon said grading in proportion to the number of front feet so abutting, and under the provisions of section 1304 of the Political Code of the state of South

Dakota, and otherwise in manner and form as provided by law."

At this time the city council adopted a motion to the effect that the cost of grading be divided between the two districts as nearly as possible on the basis of 20 cents a yard for the "hill" district and 32 cents a yard for the "flat" district. The contract was fully and acceptably completed on the part of the contractors. The plaintiff became the assignee of the contractors. The city engineer returned an estimate for special assessment showing the total cost of the Fanebust contract to be $44,390.19. Of this amount he charged $17,073.15 to the "hill" district, or approximately $1.16 per front foot. He charged the remainder, $27,317.04, to the "flat" district, or approximately $1.78 per front foot. The city council was not satisfied with this estimate and required the engineer to add to the assessment in the "flat" district the sum of $7,397.15 for filling streets theretofore voluntarily done by property owners, amounting to said sum on the basis of 42 cents per cubic yard, and for filling streets done by one Biewer $2,397.35. Some of the earth had been dumped in the streets by property owners 20 years previously. The amounts were determined by measuring the excavations in the basements of the property owners, and the price of 42 cents per yard was not based on the cost to the property owners of excavating their basements, but was based on the cost of filling the streets in the "flat" district under the Fanebust contract. Biewer had previously graded certain other streets and had placed surplus earth in some of the streets covered by the present contract under a verbal understanding that the city would pay him for the overhaul. Thereupon, the city engineer, in August, 1909, returned his estimate for assessment under the Fanebust contract, the "hill" district being charged the same as before, but the above additional sums were added to the charge against the "flat" district, making a total assessment in the "flat" district of $37,111.54, or approximately $2.33 per front foot. This assessment was approved by the city council, and a special assessment roll was filed with the city treasurer. It may properly be observed that these proceedings from the beginning up to this point exhibited a most flagrant disregard of law on the part of the city council. Some of the assessments were paid, and the money so received by the city was paid partly to plaintiff, partly to Biewer, and partly to

property owners who had done their own filling. The assessments on the lots involved in this action, and other lots, were not paid, and at a city treasurer's sale for delinquent special assessments these and other lots were struck off and sold to the city of Pierre for want of other bidders, and certificates of sale were issued thereon to the city of Pierre. Some of the certificates were assigned to property owners to pay them for the filling of the streets done by them. The certificates covering the lots involved in this action were assigned to plaintiff. No redemptions from these sales have ever been made, and no deeds have ever been issued on said certificates involved in this action. In a previous action in the circuit court of Hughes county, one of these certificates was held to be illegal and void.

The present action was begun by plaintiff in August, 1913. The defendants were the city of Pierre, 18 property owners, the county of Hughes, and all persons unknown "who have or claim to have any estate or interest in or lien or incumbrance upon the premises described in the complaint." The complaint sought alternative relief. It asked that the rights of the respective parties be determined: (a) That if the assessments were found to be valid they be so declared; (b) that if found invalid the premises be declared to be subject to reassessment, and that the city of Pierre be adjudged to make a reassessment; (c) that, if found invalid and not subject to reassessment, the city of Pierre be adjudged to pay plaintiff the amount due him. The city of Pierre, the county of Hughes, and 5 of the 18 property owners made answer to the complaint. Trial was had to the court. Findings of fact and conclusions of law were made, finding the assessments to be void; determining the amount due plaintiff to be $4,-372.36, with interest from September 7, 1909; determining that the method of combining the work in the two districts was more economical than if it had been done under separate contracts for each street, and that the assessment of 20-52 of the entire cost of the Fanebust contract to the "hill" district and 32-52 to the "flat" district was equitable, and that each of the lots was benefited in excess of the amount of its assessment; determining the total amount of a reassessment in the "hill" district under the Fanebust contract to be the same as determined by the city authorities plus 7 per cent. interest; determining the total amount of a

reassessment in the "flat" district under the Fanebust contract, including the Biewer "fill" and the property owners' "fill," to be the same as determined by the city authorities plus 7 per cent. interest; determining the amount due on each lot in controversy by adding interest to the original assessment; and determining the priorities between these reassessment liens and the tax liens and tax deeds held by the county of Hughes. Judgment was entered adjudging: (1) That the special assessments, the special assessment sale, and the certificates of sale issued thereon were void and the same were vacated and set aside; (2) that there was due and owing plaintiff the sum of $6,081.08 on the date of the judgment to-wit, $4,372.36, with interest from September 7, 1909; (3) "that the lots and premises described in the findings of fact, herein and hereinafter described, be and the same are hereby reassessed accordingly as the same were benefited for the local improvement upon which said special assessments were based, and were benefited by said local improvement as follows, to-wit"— setting forth the amount of the reassessment against each lot; (4) declaring the same to be prior liens on the respective premises except as against the lien for certain general taxes; (5) directing sale by the sheriff as upon execution if not paid within 60 days, and the payment to plaintiff of the proper proceeds of the sale; (6) adjudging that the interest of all parties be cut off unless redemption be made within the year of redemption; (7) for costs. No provision for a deficiency judgment in plaintiff's favor against the city of Pierre was made. From the judgment and order denying a new trial, plaintiff alone has appealed.

The theory of appellant is thus summed up in his brief:

"It is our contention that, having failed to pay by the levy of a valid special assessment and the original assessment and sale having been set aside, the city is now liable generally as for breach of contract, and that the purported reassessment attempted to be made by the court in this action is illegal and without jurisdiction or authority of law, and is not a substantial compliance with the city's obligation under the contract."

The theory of respondent is:

"(1) The lower court had the power, and it was its duty, to make the reassessment which was made. (2) Even if the court

did not have the right to reassess, appellant cannot recover a money judgment against the city."

[1] It seems to be the generally accepted rule that, in the absence of express provision to the contrary, a municipal corporation impliedly contracts to cause a valid assessment to be made when it enters into a contract for a street improvement which is to be paid for by special assessment, and that, when an assessment is invalid because of some defect in the proceedings which is chargeable to it, the municipal corporation is holden to the contractor. We are of the opinion that the above rule is a reasonable one and that it is applicable to the case before us. Some of the principal authorities for these views are Barber Asphalt Paving Co. v. City of Denver, 72 Fed. 336, 19 C. C. A. 139; District of Columbia v. Lyon, 161 U. S. 200, 16 Sup. Ct. 450, 40 L. ed. 670; Gilcrest v. City of Des Moines, 157 Iowa, 525, 137 N. W. 1022; Pine Tree Lumber Co. v. City of Fargo, 12 N. D. 360, 96 N. W. 357; Rogers v. City of Omaha, 82 Neb. 118, 117 N. W. 119; Terrell v. City of Paducah, 122 Ky. 331, 92 S. W. 310, 5 L. R. A. (N. S.) 289; O'Neil v. City of Portland, 59 Or. 84, 113 Pac. 655; Hamilton on Special Assessments, §§ 671-675; Page & Jones on Taxation by Assessment, § 1507. In Barber Asphalt Paving Co. v. City of Denver, supra, the United States Circuit Court of Appeals for this circuit said.

"If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds realized or to be realized by assessments upon abutting property, the city is primarily and absolutely liable to pay the contract price itself, if it has no power to made such assessments, or if the assessments it attempts to make are void."

[2] There can be no question but that the general powers of cities specified in section 1229, Pol. Code, gave the city of Pierre the power to make a contract for street grading. But it is urged that even if the city should be held ultimately liable for any deficiency, it is the duty of the contractor to seek to have a reassessment made when there is a provision of statute for reassessment, and that until that remedy is exhausted the city cannot be held liable. In support of this rule it is urged that while

there is a conflict of judicial opinion, the weight of authority supports the rule. Hamilton on Special Assessments, § 462; Foster v. City of Alton, 173 Ill. 587, 51 N. E. 76. Without determining whether such rule would be applicable under our statutes, which give the contractor no interest in the special assessments, no lien upon the property assessed, and no voice in the assessment proceedings, it is sufficient to say that it clearly appears that no valid reassessment can be made which will include the Biewer "fill" and the property owners' "fill," and that without such inclusion there must be at least a shortage of approximately 10-37 of the total amount assessed against the "flat" district, without considering the other difficulties to be overcome in the making of a reassessment.

[3] The inclusion of those items in the original assessment so palpably violated the due process of law clause of the state and federal Constitutions that it needs no argument or citation of authority to uphold our decision that they cannot be included in a reassessment. So that it is immaterial whether or not the contractor should ordinarily await the outcome of a reassessment proceeding. His remedy thereunder would in this case be clearly inadequate.

[4] It further clearly appears that the city might be holden to the contractor upon an entirely different theory than the one above set forth, and the pleadings and evidence are adequate to uphold a decision under this other theory. The city assigned to plaintiff, on July 23, 1910, treasurer's sale certificates aggregating the sum of $4,825.25 on the property in question issued to it under the sale held on March 7, 1910. It will be noticed that this aggregate sum was considerably in excess of the amount then due on the Fanebust contract. Section 1319, Pol. Code, provides:

"Whenever a special assessment for a local improvement shall be set aside or declared null and void by a court of competent jurisdiction, the city shall save the purchaser at the sale for said special assessment harmless, by paying him the amount of the principal which he paid upon such sale, together with interest at 12 per cent. per annum from the date of sale."

If, then, the city had authority to assign those certificates to plaintiff, he then occupied the same position with reference to them as a purchaser at the treasurer's sale would have occupied,

and he would now be entitled to the amount of the certificates with 12 per cent. interest, and this without regard to the claim of the city that plaintiff took said certificates in full settlement of the contract. If plaintiff were allowed judgment on that theory, the amount would be greatly in excess of the amount adjudged to be due him by the trial court.

[5] In view of the fact that the reassessment cannot stand we deem it pertinent to comment upon several matters which would arise upon a new reassessment. In the "hill" district, a street 492 feet in length called Miriam avenue was excavated and graded to the extent of 5,194 cubic yards at a cost of $5,141, of which only $572.69 was assessed against the abutting property, and the balance was distributed over the other property in said grading contract. The high cost of grading this street was due to the fact that nearly half of said work was the excavation of shale. It was found by the trial court in finding 31 that it was necessary to grade Miriam avenue in order to obtain dirt to fill streets in the "flat" district. But in finding 34, the court found that, of the 82,000 cubic yards of earth excavated in the "hill" district, only 64,196 yards were used to fill streets covered by the assesment in the "flat" district, and that the excess of approximately 17,000 yards the city caused to be dumped into a certain alley and on the cross-street approaches to some of the streets graded under this proceeding. We are at a loss to understand how, in view of finding 34, the court could have found that it was necessary to grade Miriam avenue for the purpose of obtaining its 5194 cubic yards of earth for the "flat" district when, without the earth from Miriam avenue, there was still an excess of approximately 12,000 cubic yards of earth beyond what was necessary to fill the streets. As we understand the evidence and findings, the cost of the excavation of this street, above the amount assessed against the property abutting on said street, was erroneously charged to the "hill" district, and the cost of the overhaul was erroneously charged to the "flat" district. The assessment against the abutting property on Miriam avenue has been paid; consequently there is now no recourse against said property for any further amount.

[6] While the apportionment of the cost of the Fanebust contract between the two districts, on the basis of 20-52 and 32-

52 respectively, was beyond the power of the city council, we are inclined to agree with the trial court that such proportionate division was equitable for the purpose of a reassessment.

[7] One further point needs consideration. Section 4, chapter 20, Laws 1913, authorizes the court to make a reassessment in cases of this kind, but that section requires that "the true and just amount of such assessments due upon such property must be ascertained, and judgment rendered and given therefor." Under the facts in this case, it is our opinion that a reassessment which charges each front foot in the "hill" district the same amount cannot be said to represent the true and just amount due. The same may be said of the "flat" district. We are of the view that appellant's proposed conclusions of law outlined the equitable method of ascertaining the charge to be made to each street, viz., by charging to each street its proportion of the charge to the district according to its yardage ratio.

The judgment and order appealed from are reversed, and, upon the filing by plaintiff with the clerk of the circuit court, within and for Hughes county of the treasurer's sale certificates held by plaintiff and described in the findings, the trial court is directed to enter judgment in favor of plaintiff and against the city of Pierre for the sum of $4,372.36, with interest at 7 per cent. from September 7, 1909, together with costs. It is further ordered that this cause be remanded to the trial court for such further proceedings consistent with this opinion as may be lawful and appropriate.