# CITY OF McLAUGHLIN, S. D., v. TURGEON.

## No. 9981.

Circuit Court of Appeals, Eighth Circuit.
Jan. 28, 1935.

Julius Skaug, of Mobridge, S. D. (Pat Morrison, of Mobridge, S. D., on the brief), for appellant.

W. M. Potts, of Mobridge, S. D., and S. W. Clark, of Redfield, S. D. (Sterling, Clark & Grigsby, of Redfield, S. D., on the brief), for appellee.

Before STONE, GARDNER, and VAN VALKENBURGH, Circuit Judges.

GARDNER, Circuit Judge.

This is an appeal from a judgment for the recovery by appellee against the appellant of the sum of $10,780, as damages and costs on account of certain bonds issued by appellant for local improvements. For convenience, the parties will be referred to as they were designated in the lower court.

In 1921 the city of McLaughlin, in South Dakota, created a sewer district, which included only a part of the city, for the purpose of constructing certain service sewers within the district. Proper plans and specifications were made and adopted, and special assessments were regularly levied against the property of the district. It was provided by ordinance, as by statute authorized, that the assessments made and levied against the property of the district, should be divided into ten equal annual installments, and that special assessment improvement bonds be issued in lieu of special assessment certificates, for the purpose of financing the improvement. All proceedings taken relating to the creation of the sewer district, the spreading of the special assessments, and the approval and levying of such assessments were regularly had and taken, and all special assessments became effective as liens against the property benefited.

Section 6404, South Dakota Revised Code of 1919, amended by Laws 1921, c. 320, provides that the contract price of local improvements may be made payable in assessment certificates, and these may be delivered to the contractor in payment for the improvement (section 6405, as amended by Laws 1919, c. 269). Section 6406 provides that the governing body may divide the assessment into any number of equal annual installments, not exceeding ten. Section 6407 provides that, when an assessment is divided into installments, the first installment shall be due and payable upon the filing of the assessment roll with the city or town treasurer, and the remaining installments shall be due and payable "one, two, three, four, five, six, seven, eight or nine years

from the date of such filing, with interest at such rate as the governing body shall by ordinance prescribe: Provided, such rate shall not exceed seven per cent per annum, payable annually on the whole sum unpaid at the maturity of the several installments." This section also provides that "each of such installments shall become delinquent sixty days from the date it becomes payable and thereafter shall draw interest and penalty, and be certified to the county auditor and county treasurer in the same manner as an undivided assessment; provided, further, that any or all installments may be paid to the city or town treasurer at any time before maturity, in which case interest shall be collected only to the time of payment, and the lien of the assessment be discharged to the extent of such payment."

Section 6409 as amended by Laws 1921, c. 319, provides an alternative method of paying for local improvements. It is as follows: "Whenever any special assessment is divided into installments, the governing body of the municipal corporation, in place of issuing assessment certificates as provided in Section 6404, may by ordinance provide for the issuance of its negotiable bonds without a vote of the electors in an amount equal to the entire assessment and sell the same at not less than par with accrued interest, to pay the cost of the improvement; all such bonds shall mature not later than the maturity of the last assessment installment and bear such rate of interest, not exceeding six per cent per annum, payable annually or semi-annually, as the governing body may provide; and all amounts derived from the special assessment shall be used for the payment of such bonds and interest, and for no other purpose."

This section was amended by chapter 319, Session Laws 1921, which went into effect July 1, 1921. The amendment contains a provision that the governing body of the municipal corporation may by ordinance provide for the issuance of the bonds without vote of the electors.

The city followed the method of financing provided by this section 6409. Bonds totaling $28,800 were issued November 1, 1921. These became due and payable serially commencing November 1, 1922. The last of the series matured November 1, 1930. Special assessments were spread against 356 lots. The assessments on 166 of these lots were paid in full, while on other lots part of the assessments was paid, and on 66 lots no payments were made. Installments of assess-

ments became delinquent on part of these lots during the years 1921 to 1930, inclusive, but the city auditor failed to certify these delinquencies to the county auditor, except that in the year 1923 he certified all the unpaid assessments. Instead of limiting the certification to the amount of the delinquent assessments, as required by section 6407 of the statute, he certified as delinquent the total amount of the unpaid assessments with interest, whether due or not. There were 84 lots certified in this manner as delinquent, and the special assessments were included in the sale with the general taxes.

Section 6402, South Dakota Revised Code 1919, as amended by Laws 1919, c. 269, provides that: "It shall be the duty of the City Auditor or Town Clerk, between the first and fifteenth days of October in each year, to certify to the County Auditor of the County in which such municipality is located, or if located in more than one county, to the County Auditor of the County in which the property assessed is located, all special assessments remaining unpaid, which became delinquent on or before the first day of October of that year. In certifying such special assessments, the City Auditor or Town Clerk shall specify the consecutive number of the assessment, as shown by the tax book in his office, the original amount of the assessment, or instalment thereof, so certified, the amount of the interest and penalty thereon to the first day of October of that year, the name of the person in whom the title to the property rests, as shown by said tax book, the character of the improvement for which the assessment was made, and a brief description of the property against which the assessment was made, and it shall be the duty of the County Auditor and County Treasurer to proceed, with reference to such assessments, as provided in Section 6797."

Section 6797 referred to makes it the duty of the county auditor, when delinquent special assessments are certified to him, to certify them immediately to the county treasurer; and it is provided that "such delinquent special assessments shall be collected by the county treasurer, by sale of the lots or parcels of land so assessed at the next succeeding sale of real property for delinquent taxes, in the same manner and at the same time and place. * * * Sales of property made for the collection of delinquent special assessments shall be conducted in the same manner as other tax sales made by the county treasurer and the own-

ers of the property so sold shall have the same length of time in which to redeem the same, and be entitled to the same notice before the issuance of a tax deed as in other cases of tax sales."

Upon collection, the county treasurer is required to place the funds collected to the credit of the proper funds. Section 6762, Rev. Code 1919. Sales of real property for delinquent taxes are made on the second Monday of December in each year. Section 6786, Rev. Code 1919.

The principal on plaintiff's bonds and various installments of interest are unpaid. The entire amount received from collections of special assessments was used for the payment of principal and interest on bonds. Some bonds with earlier maturities were retired. While suing on the bonds, plaintiff bottoms his right to recover upon the default of the city auditor in failing to make the certifications of delinquencies.

At the conclusion of plaintiff's evidence, defendant moved for a directed verdict on the grounds: (1) That the evidence fails to show actionable negligence on the part of the defendant, because the negligence of the city auditor was not legally chargeable to the city; (2) that plaintiff has failed to show that he had suffered any damages on account of the failure of the city auditor to certify the assessments because the restricted and inferior lien of the special assessments, which was the sole source of payment of the bonds, still existed, and that there was no evidence that the value of the same had been diminished or the lien lost; (3) that plaintiff's remedy was by mandamus to coerce the city auditor to perform his statutory duty, and that this was his sole remedy.

Plaintiff also moved for a directed verdict in his favor, whereupon the court excused the jury and requested both sides to submit requested findings of fact and conclusions of law. The court adopted the findings and conclusions submitted by plaintiff, and entered judgment in his favor for the whole amount of the principal and interest due on the bonds.

On this appeal defendant contends that: (1) The special assessment bonds are not general obligations of the city; (2) the city is not liable for the neglect of the city auditor to make certification of the delinquent special assessments; (3) the remedy of the bondholder is mandamus to compel the city auditor to perform his statutory duty; (4) the covenant pledging the full faith and

credit of the city to cause the special assessment for the total cost of the improvement on which the bonds were issued to be collected and paid into a fund to be used solely for the payment thereof was void; (5) the bondholder still had a lien for the unpaid installments, and there was no evidence that the neglect of the city auditor was the proximate cause of any damages, nor any evidence in the record by means of which the amount of such damages could be determined.

The cause has been well briefed and ably argued by counsel on either side.

These bonds in form carry a promise of the city to pay the bearer the amount thereof, and contain the following language:

"This Bond is issued by the City of McLaughlin, for the purpose of providing funds to pay the cost of local improvements, the construction of service sewers, and is issued in place of special assessment certificates, and pursuant to the provisions of the laws of the State of South Dakota and pursuant to the resolutions, ordinances and notices duly adopted and given by the City Council of said City.

"It is hereby certified and recited that all acts, conditions and things required by the Laws and Constitution of the State of South Dakota to be performed, to happen and to exist precedent to and in the levy of said special assessment and the issuance of this bond, have been properly done, have happened, and existed in regular and due form, manner and time, as required by law; and that said special assessments against the property benefited to pay the cost of such local improvement have been legally made, and were by ordinance divided into ten equal installments, and the amount of said special assessment is sufficient to pay the principal and interest on this bond when and as the same becomes due, and the amounts collected from such special assessment are hereby pledged for the punctual payment of the principal and interest of this bond; and that this bond is issued for an authorized corporate purpose, that the city is duly organized and existing body politic and corporate under the Constitution and Laws of the State of South Dakota.

"The faith and credit of the City of McLaughlin are hereby irrevocably pledged to cause the special assessment for the total cost of the improvement on account of which this bond is issued to be collected and paid into a fund to be used solely for the payment hereof."

It seems clear under the authorities that the bonds here in question were not in the first instance primary obligations of the city, but were payable only from the proceeds of special assessments. Gross v. City of Bowdle, 44 S. D. 132, 182 N. W. 629; Suttor v. Town of Wetonka (S. D.) 253 N. W. 64; City of Winner v. Kelley (C. C. A. 8) 65 F. (2d) 955. It is contended by plaintiff, however, that chapter 316, Laws 1921, which became effective July 1, 1921, put it in the power of the municipality to make these bonds primary obligations of the city. This act provides:

"Section 1. That in addition to the methods now provided by law for financing the construction of sewers by municipal corporations, the municipal corporations of the state are hereby empowered to issue bonds for the purpose of financing the construction of sewers and to levy a general property tax on the property within the corporate limits of such corporations for the purpose of paying such bonds at the time the same shall become due.

"Section 2. The issuance of such bonds and the terms and conditions thereof shall be governed by the provisions of Title 6, Part 8, Chapter 10, Article 1 of the South Dakota Revised Code of 1919."

A reference to title 6, pt. 8, c. 10, art. 1, of the South Dakota Revised Code of 1919, discloses the fact that it includes Code section No. 6413, which requires as a condition precedent to the issuance of bonds that an election be held for the purpose of determining whether bonds of the city shall be issued for an authorized corporate purpose. Confessedly, no such election was held in the instant case, so that it cannot logically be urged that these bonds were issued pursuant to authorization of this special act. In fact, the bonds show on their face that they were not so issued, but were issued pursuant to proceedings looking to the creation of a district in which the property benefited would alone be assessed to pay the bonds. The Supreme Court of South Dakota has held, as has this court, that such bonds are to be paid from the funds raised by the special assessments. Even though the bonds contained an agreement by which in form the city guaranteed that the special assessments would provide sufficient revenue to retire them, as contended by plaintiff, such guaranty, in view of the South Dakota statutes, would be ultra vires and void even as against an alleged bona fide purchaser for value. Brenham v. German-American

Bank, 144 U. S. 173, 12 S. Ct. 559, 36 L. Ed. 390.

It has been often held by this court that recitals in a bond may estop a municipal corporation to set up irregularities in an attempt to defeat the validity of the bonds. Caldwell v. Guardian Trust Co. (C. C. A. 8) 26 F.(2d) 218. The recital in these bonds, however, notified the purchaser that their obligation is based upon the special assessment procedure outlined in the South Dakota statute. All authorities agree that the purchaser of municipal bonds is not only chargeable with notice of what is recited in the bonds but with notice of the statute under which the bonds were issued. United States ex rel. Huidekoper v. County Court of Macon County, 99 U. S. 582, 25 L. Ed. 331; Katzenberger v. Aberdeen, 121 U. S. 172, 7 S. Ct. 947, 30 L. Ed. 911; St. Lawrence Tp. v. Furman (C. C. A. 8) 171 F. 400, 17 Ann. Cas. 1244. So far as the direct covenant to pay is concerned, if, in view of the other recitals in the bond, it could be so construed, it cannot be made the basis of recovery in this action.

Plaintiff, in support of his right to recover, relies largely upon the following cases from this court and from the Supreme Court of South Dakota: Barber Asphalt Paving Co. v. City of Denver (C. C. A. 8) 72 F. 336, 338; Bates County, Mo., v. Wills (C. C. A. 8) 239 F. 785; Freese v. City of Pierre, 37 S. D. 433, 158 N. W. 1013, 1015; Coolsaet v. City of Veblen, 55 S. D. 485, 226 N. W. 726, 67 A. L. R. 1499.

In Barber Asphalt Paving Co. v. City of Denver, the city entered into a contract for the construction of certain street pavements. The contractor fully performed its contract, and the city paid a part of the contract price, but refused to pay the balance, whereupon the contractor brought suit. Certain railway companies using the streets had made a contract with the city in consideration of a license granted to them by it to use the streets, to pave the streets to the official grade, and to pave them between the tracks, and for two feet on each side of them in a manner directed by the city. The amount unpaid on the paving contract was the cost of grading, paving, and improving that part of the street between the railroad tracks and within two feet outside of the rails. It appears from the opinion that the city council could not collect this from the street railway companies. In the course of the opinion it is said: "It is no answer to this proposition to say that, while the city contracted

that the railway companies should pay this $4,169.16, it did not, before the contract was let, provide, by ordinance or otherwise, any method by which the railway companies could be compelled to pay it."

In other words, the city could not collect this money from the railway companies. In the course of the opinion it is further said: "If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds realized or to be realized by assessments upon abutting property, the city is primarily and absolutely liable to pay the contract price itself, if it has no power to make such assessments, or if the assessments it attempts to make are void."

It is also said: "If a municipal corporation which has the power to make a contract for street improvements contracts for them, and stipulates in the contract that the agreed price of the improvements shall be paid to the contractor out of funds to be realized by assessments upon abutting property, and the city has power to make the assessments, but fails to do so, or fails to make valid assessments, and thereby to provide the fund out of which the contractor may receive the price of his labor and materials, the city is primarily and absolutely liable to pay the contract price itself."

In Freese v. City of Pierre, supra, a contractor brought action against the city to recover a balance due for grading the streets. The original assessment was void, and a reassessment would have been inadequate to meet the cost of the improvement. The court held the city liable, and in the opinion it is said: "It seems to be the generally accepted rule that, in the absence of express provision to the contrary, a municipal corporation impliedly contracts to cause a valid assessment to be made when it enters into a contract for a street improvement which is to be paid for by special assessment, and that, when an assessment is invalid because of some defect in the proceedings which is chargeable to it, the municipal corporation is holden to the contractor."

And so, in Coolsaet v. City of Veblen, supra, the city authorities failed to make an assessment, and the city was held liable.

In Bates' County, Mo., v. Wills (C. C. A. 8) 239 F. 785, 790, we said: "If a municipal or quasi municipal corporation which has the power to make a contract for internal

improvements contracts for them and stipulates that the agreed price of the improvements shall be paid to the contractor out of funds to be realized out of special assessments, or, out of the proceeds of bonds it has the power to issue, and the corporation has power to make the assessments or to issue the necessary bonds but fails to make sufficient valid assessments, or to issue sufficient bonds to provide the necessary funds to pay the contractor the contract price of his material and labor, or if it misappropriates such funds to other purposes, the corporation becomes primarily liable to pay the contract price itself."

■ These cases clearly establish the rule that, where the city has disabled itself from making or collecting an assessment, the city will be primarily liable. But, in the instant case, all of the proceedings leading up to and including the spreading of the special assessment and the issuance of the bonds were regularly had and taken, and the default is that of an officer of the city subsequently failing properly to certify delinquencies to the county auditor. As before said, the city was not in the first instance primarily liable for the cost of these improvements, and the question is whether it has become liable because of its breach of duty in enforcing the liability against the property as contemplated by the improvement scheme and the contract thereunder.

While there is considerable conflict of authority upon the question of primary liability of a municipality where it has power to make the improvements at the cost of the property benefited, and where there are no original defects which invalidate the proceedings taken for the purpose of establishing a lien on the benefited property, but where those proceedings were not carried out in accordance with the statute so as to charge the property benefited and provide the contemplated funds for the cost of the improvement, the conflict is more apparent than real, and arises largely from differences in the various statutes involved. Here it is observed that the city specifically covenants "to cause the special assessment for the total cost of the improvement, on account of which this bond is issued, to be collected and paid into a fund to be used solely for the payment hereof." It is contended by appellant that the officers of the city exceeded the power granted to them by such a covenant, and hence it is not binding on the city. Of course, if the city was without authority to enter into such a contract or to

make such a covenant, it would not be binding upon it.

It is therefore necessary to refer to the South Dakota statutes conferring authority upon municipalities in connection with the making of local improvements by special assessment. It is conceded that the city was authorized to contract for the improvement here involved, that it was authorized to levy the special assessments, and that it was authorized to issue bonds in lieu of special assessment certificates, so that, in the final analysis, the question to be considered is whether it was the duty of the city to collect the assessments in the manner provided by law.

Section 6169, subd. 76, S. D. Revised Code 1919, confers on every municipal corporation power "to make assessments for local improvements on property adjoining or benefited thereby, to collect the same in the manner provided by law, and to fix, determine and collect penalties for nonpayment of any special assessments."

■■ It is to be observed that this statute specifically confers on the municipality the power to collect special assessments for local improvements. Pursuant to this power, the proper municipal authorities, by contract, pledged the full faith and credit of the city to cause the special assessment to be collected and paid into a fund to be used solely for the payment of the assessment. The contract, being a valid one, imposed a duty upon the city to make the collection of the special assessment in the manner provided by law. To be sure, the city was not an insurer nor a guarantor of payment, but it was incumbent upon it to exercise due care and diligence in the performance of the obligation assumed, which the city had, under subdivision 76, § 6169, supra, power to assume. True, the law contemplates that the duty of the city in this regard shall be performed through a certain specified agency, to wit, the city auditor. In fact, the municipality must usually act through some agency, yet the duty so performed is no less that of the municipality because performed through the agency of the city auditor. As said by the Supreme Court in Barnes v. District of Columbia, 91 U. S. 540, 545, 23 L. Ed. 440: "A municipal corporation may act through its mayor, through its common council, or its legislative department by whatever name called, its superintendent of streets, commissioner of highways, or board of public works, provided the act is within the province committed to its charge."

408

In Page & Jones on Taxation by Assessment, § 1511, vol. 2, it is said: "If the city neglects to collect an assessment which it is bound to collect for the benefit of a contractor, it is liable personally therefor, even if there are contractual or statutory provisions against a personal liability of the city."

In Hauge v. City of Des Moines, 207 Iowa, 1209, 224 N. W. 520, 523, the Supreme Court of Iowa, in an opinion by Chief Justice Albert, among other things, says:

"By reference to the bond heretofore set out, the city pledge is as follows: 'And for the assessment, collection and payment hereon of said special tax, the full faith and diligence of said City of Des Moines are irrevocably pledged.' What does this pledge mean?

"The city pledges itself, among other things, for the 'collection' of said special tax, and also pledges its 'full faith and diligence' for that purpose. The power to enforce the collection of these taxes by statute is conferred upon the city, and the lien on the property is in favor of the city. The fact, that the treasurer could not sell the same for lack of a bidder, does not excuse the city for a failure to perform its pledge to use its best efforts, under the statute, to collect the same for the benefit of the bondholders. So far as shown here, the city did nothing to redeem its pledge in this respect, and it is so admitted in argument. Having failed so to do, it has not complied with its pledge of full diligence in the collection of said tax, and the demurrer to this count was properly overruled."

In Oklahoma City v. Orthwein (C. C. A. 8) 258 F. 190, 195, it appeared that the city, although it had power so to do, had failed to make a reassessment. The original assessment was valid, but a part of it became unenforceable because the city had allowed an injunction against its collection to be entered by default. The laws of Oklahoma provided that the city itself should in no case be liable on the improvement bonds. In holding the city liable, we said: "In our opinion, the evidence showed that the city was guilty of negligence and of a willful refusal to make valid assessments to pay the bonds of the plaintiff. The limitation of liability of the city above specified does not, in our opinion, exclude a remedy based upon negligence and willful refusal to perform this duty."

Defendant strongly relies upon Moore v. City of Nampa, 276 U. S. 536, 48 S. Ct. 340, 341, 72 L. Ed. 688, and Powell v. City of Ada, Okl. (C. C. A. 10) 61 F.(2d) 283, 286. But these authorities are not in conflict with the views here expressed. In Moore v. City of Nampa, supra, action was brought to recover damages alleged to have been suffered by reason of defendant's negligence and false representations in respect to certain improvement bonds. It was alleged that the bonds contained false recitals, and that certain officers of the city had issued a certificate, falsely stating that no litigation was pending or threatened, in respect to the creation of the district, the construction of the sewer, or the issuance of the bonds. It was alleged that the bonds which plaintiff owned were worthless and that the defendant was negligent in the special assessment proceedings and in causing false certificate to be issued. The statute under which the bonds were issued declared that the holder should have no claim against the city, except for the collection of the assessments, and that the bondholders' remedy, in case of nonpayment, should be confined to the enforcement of the assessments, and that the interest and principal should be payable out of that fund "and not otherwise." The suit was for tort, and the court held that the facts showing the invalidity of the bonds were disclosed by the public record of the proceedings, and known to plaintiff's attorneys, upon whom plaintiff relied before purchasing the bonds; that there was no authority requiring or authorizing the city to make the certificate on which plaintiff claimed to have relied. The court, among other things, pointed out that,

"The complaint is not grounded on anything subsequently occurring. * * *

"This action is not based on contract. Recovery is not claimed on the ground that respondent was empowered to pay for the work out of funds belonging to it or upon any promise that it would do so. As no actionable negligence or misrepresentation is shown, the lower courts rightly held that no cause of action is stated in the complaint."

It is important to bear in mind that the Moore suit was for tort; that the purchaser of the bonds was chargeable with knowledge, not only of the law, but of what appeared in the public records, and that the city was not bound by the false certificates made by certain officers without any authority or warrant in law therefor.

The action in Powell v. City of Ada, Okl., supra, was also in tort for alleged negligence in failing to reassess. It was not contended that the right to reassess had been lost.

In the course of the opinion by Judge McDermott, it is, among other things, said: "All courts, including the Oklahoma Supreme Court, agree that the one whose money has paved the street has a right of action if the city officials do not proceed as the statute commands, and as is agreed in the bond. The conflict arises over the question of what right of action he has, that is, whether the proper action is mandamus against the officials, or whether he may sue the city for their neglect.'"

It is also said: "In the case at bar, there is no contention that the right to re-assess the cost of the improvement against the abutting property subject to assessment has been lost. The appellant, by his demand on the city, asserts that the right exists. The city, by its tardy compliance, agrees. It is our conclusion, under these facts, that appellant cannot now maintain an action for damages against the city."

■ In the instant case, as has already been observed, all the proceedings in connection with the making of the assessment and issuing the bonds were regularly had and taken. The action here is on contract and not for tort. Plaintiff's loss was occasioned by what subsequently occurred, to wit, the failure of the city auditor properly to certify the delinquencies in payment of the special assessment. These bonds were issued November 1, 1921, and they matured serially beginning November 1, 1922, and ending November 1, 1930. The first maturity date of the bonds purchased by plaintiff was November 1, 1928. All bonds numbered from 1 to 34, inclusive, with interest, were paid when due, and the first default occurred November 1, 1928. Plaintiff had regularly received his interest up to November 1, 1928, and interest was being paid on all the other bonds. There was nothing to call plaintiff's attention to the fact that the city had failed to comply with its covenant in the bond and its duty under the statute to take the prescribed steps for the collection of the assessment. The neglect of the city auditor, in fact, began on October 15, 1922, and continued thereafter, but during this time plaintiff was receiving his interest payments promptly, and the principal of the first obligation held by him was not due until six years thereafter. Plaintiff could not have brought mandamus proceedings prior to October 15, 1922, because he could not have anticipated that the city auditor would fail to certify the delinquent list, and, after the default had occurred, it would be too late to resort to mandamus, because the time prescribed by statute for certifying the delinquent list had expired, and the right to have the lots offered for sale at the 1922 tax sale was lost. But we think the plaintiff was warranted in assuming that the city would comply with its contractual and statutory duty, and, unless facts were brought to his attention advising him to the contrary, it was not incumbent upon him to inspect the city records from time to time, there being nothing to put him on inquiry.

The matter of certifying delinquent assessments was defective in four particulars: First, there was no certification at all within the time prescribed by statute for the default of 1921; second, when the certificate was finally made in 1923, it not only certified as to the delinquencies of 1921 and 1922, but also attempted to accelerate the payment of all remaining installments, and the certificate was as to the total remaining unpaid assessments, although there was no default as to eight of such installments; third, there was no certification as to the 1923, 1924, 1925, 1926, 1927, 1928, 1929, and 1930 defaults. By reason of the failure to certify as to the 1921 delinquencies, there was no opportunity afforded to bidders at the 1922 tax sale to purchase certificates to these lots; by reason of the certification as made in 1923, there was no opportunity for bidders to purchase for the amount, due and delinquent, but bidders were required to bid an amount on each lot equal to the delinquencies in 1921 and 1922, plus the installments that were not by their terms to become due for from one to seven years thereafter; fourth, there was no certification and no opportunity for prospective bidders to purchase as to any of these lots after the tax sale of 1923.

There is no provision in the South Dakota statutes for reassessment to cure defaults and omissions such as occurred in this case, so that the city, by its failure to comply with its contract and statutory duty, made it impossible to collect these assessments through bidders at tax sale.

Judge Dillon, in his work on Municipal Corporations (5th Ed.) at page 1256, in discussing the liability of a municipality for failure to make collection of a special assessment for local improvements, among other things, says: "Local improvements, such as grading or paving streets, making sewers, and the like, are public improvements, for the benefit of the city at large, and are not the private improvements of the

410

abutter. The mode or payment by a local assessment on the abutter for benefits is an exercise of the State's power of taxation, and the proceeding as to him is in invitum. The city alone has the power to make the assessment and to collect it, and the duty to exercise the power and to make and collect the assessment is a duty resting upon the city, in the performance of which the contractor has a direct and immediate interest. It is an erroneous view that the city authorities in this matter are the agents of the contractors. They are agents, if agents at all, appointed by the law, and their failure to do their duty cannot be imputed to a contractor as a fault on his part. The city is, we repeat, under a duty to the contractor —the contractor is under no duty in this respect to the city, but has a right to have the city's duty faithfully performed. Time and again has experience shown that when the contractor has completed his work the city finds it to be a disagreeable duty to enforce the assessments, and it either refuses or unreasonably neglects to do so. * * * It is a universal principle of law and justice that the neglect of a plain duty of this kind is actionable in damages in favor of one who has an interest in the performance of such duty. The practical effect of applying this doctrine to cases like those under consideration is salutary. As long as no assessment is being enforced, the abutter and the general taxpayer, and too often the city council, are satisfied. But if the city is held to be liable in damages for a refusal to act or for negligence in the discharge of its duty, then it becomes a question between the general taxpayer and the abutter, and the general taxpayer will be interested to see that the burden shall fall on the abutter where the scheme of the improvement and the law have placed it."

The city, having with authority contracted to collect the special assessment in the manner provided by law, and having negligently failed to follow the statutory provisions with reference to the collection of such assessment, committed a breach of its contract, and this action is properly brought for damages for breach of contract. In Freese v. City of Pierre, supra, the Supreme Court of South Dakota held the municipality liable on an implied contract. Under the principles announced by the decisions of this court and the statutes of South Dakota as construed by the Supreme Court of that state, the plaintiff was not required to resort to mandamus, but, in the circumstances here disclosed, was entitled to sue for damages for breach of contract, the measure of his damage being the contract price, or, in this case, the amount due on the bonds, as held by the lower court. Freese v. City of Pierre, 37 S. D. 433, 158 N. W. 1013; Coolsaet v. City of Veblen, 55 S. D. 485, 226 N. W. 726, 67 A. L. R. 1499; Barber Asphalt Paving Co. v. City of Denver (C. C. A. 8) 72 F. 336; Bates County, Mo., v. Wills (C. C. A. 8) 239 F. 785; Barber Asphalt Paving Co. v. City of Des Moines, 191 Iowa, 762, 183 N. W. 456; Grand Lodge v. City of Bottineau, 58 N. D. 740, 227 N. W. 363.

The judgment appealed from must therefore be affirmed.