598

## CITY OF HURON v. EVENSEN.

### No. 11687.

Circuit Court of Appeals, Eighth Circuit.

July 9, 1940.

Rehearing Denied July 31, 1940.

Irwin A. Churchill, of Huron, S. D., for appellant.

Perry F. Loucks and Alan L. Austin, both of Watertown, S. D., for appellee.

Before SANBORN and WOODROUGH, Circuit Judges, and COLLET, District Judge.

COLLET, District Judge.

Action against the City of Huron, South Dakota, on special assessment bonds issued by the City. The judgment was in favor of the bondholder and against the City. From that judgment the City appeals. The parties will be referred to as the "City" and the plaintiff.

On November 1, 1931, the City issued in the aggregate $27,000 of special assessment bonds for the purpose of obtaining funds with which to pave Dakota Avenue North. The bonds were in denomination of $1,000 and each bore attached interest coupons providing for the payment of semi-annual interest. The bonds contained a recital that they were issued in lieu of special assessment certificates and in anticipation of the collection of special assessments to pay the cost of paving Dakota Avenue North. Each bond contained the following covenant or pledge: "The City of Huron hereby pledges its full faith and credit to levy special assessments upon the property benefited by said improvement in an amount sufficient to pay principal and interest thereon as the same become due and to cause said assessments to be collected and paid into a fund to be used solely for the payment thereof." The bonds were all sold. Bonds numbered 1 to 9, inclusive, have been paid. Bonds numbered 10 to 27, inclusive, except No. 14, the owner of which could not be located, are held by plaintiff as Trustee. Plaintiff is a resident of Minnesota.

A special assessment was levied against the property abutting Dakota Avenue North sufficient to provide for the discharge of the principal and interest of the bonds. The assessment was divided into ten equal annual installments. The first was due October 6, 1931, and delinquent December 7, 1931. Other installments were due each year thereafter.

In 1931 and in each of the succeeding years 1932 to 1938, inclusive, the annual installments for a number of the special assessments became delinquent.

The statutory law of South Dakota provides that the City Auditor shall, between the 15th of September and the 1st of October, certify all delinquent special as-

sessments to the County Auditor.[1] The County Auditor is directed to immediately certify the delinquent assessments to the County Treasurer who must collect them[2] by sale of the properties, if necessary, at the next tax sale.

In the years 1932 to 1936, inclusive, the City Auditor did not certify the delinquent assessments to the County Auditor but transmitted them to the County Treasurer. The County Treasurer made no effort to sell any property upon which the special assessments for the years 1931 to 1937, inclusive, had become delinquent except some sales made in 1935. These latter sales were to the County.[3]

Plaintiff made demand on the City to pay the bonds, asserting the latter's obligation to do so because of its failure to perform its pledge to cause the assessments to be collected. The City's refusal resulted in the filing of this action in 1939.

The trial court found that the purchasers of the bonds relied upon the representation and agreements of the City that it would cause the special assessments to be collected and paid into a fund to be used solely for the payment of the bonds. That court concluded that the City had breached that covenant in a substantial manner. The judgment for plaintiff for the amount due on the bonds followed.

The City contends that the failure of the City Auditor to certify the delinquent special assessments to the County Auditor as the Statute required, was a mere irregularity not affecting in any way the obligation of the taxpayer to pay, the duty or obligation of the County Treasurer to sell, or the lien of the special assessment, and was in no way prejudicial to the bondholder.

If the City's dereliction was a mere inconsequential irregularity its argument would have much force. But if its fail-

---

[1] "*Certifying Delinquent Assessments.* It shall be the duty of the city auditor or town clerk, between the fifteenth day of September and the first day of October in each year, to certify to the county auditor of the county in which such municipality is located, or if located in more than one county, to the county auditor of the county in which the property assessed is located, all special assessments remaining unpaid, which became delinquent on or before the fifteenth day of September of that year. In certifying such special assessments, the city auditor or town clerk shall specify the consecutive number of the assessment, as shown by the tax book in his office, the original amount of the assessment, or installment thereof, so certified, the amount of the interest and penalty thereon to the fifteenth day of September of that year, the name of the person in whom the title to the property rests, as shown by said tax book, the character of the improvement for which the assessment was made, and a brief description of the property against which the assessment was made, and it shall be the duty of the county auditor and county treasurer to proceed, with reference to such assessment, as provided in Section 6797." (Section 6402 of the Revised Code of 1919, as amended by Chapter 269 of the Session Laws of 1919, and Chapter 187 of the Session Laws of 1929.)

[2] "*Special Assessments in Cities and Towns.* Whenever delinquent special assessments levied in any city or incorporated town shall be certified to the county auditor as provided in article 6, chap-

ter 9, part 8, of this title, it shall be the duty of such auditor to immediately certify the same to the county treasurer, and such delinquent special assessments shall be collected by the county treasurer, by sale of the lots or parcels of land so assessed at the next succeeding sale of real property for delinquent taxes, in the same manner and at the same time and place. All real property sold for such delinquent special assessments and not redeemed shall be entered by the county treasurer upon the duplicate tax lists of the county for the succeeding years, and noted upon all duplicate tax receipts for such real property; and it shall be the duty of the county treasurer to add to the amount of each special assessment so certified interest at the rate of one per cent per month, and ten cents on each lot or parcel of ground for costs of advertising and no other costs or penalties shall be added except as provided by law for certificate of sale, deed and acknowledgment. Sales of property made for the collection of delinquent special assessments shall be conducted in the same manner as other tax sales made by the county treasurer and the owners of the property so sold shall have the same length of time in which to redeem the same, and be entitled to the same notice before the issuance of a tax deed as in other cases of tax sales." Rev.Code 1919, § 6797.

[3] The County was obliged to bid the whole amount of principal, interest and costs due. Sec. 6787, amended by Chapter 197, Session Laws of 1933; Secs. 6792 and 6794, R.C.1919.

ure to certify as directed by Statute threw any serious doubt upon the validity of the certificates and subsequent proceedings for the collection of the taxes, the covenant of the bonds was violated. While the trial court found that the tax sales in 1935 were void as a result of the erroneous certification, that result would not be necessary to a violation of the City's covenant. Actual invalidity of the certification would completely destroy plaintiff's right to collect, while serious doubt as to validity, which might later be determined by the Courts in favor of validity, would still seriously affect the possibility of realizing anything from a sale clothed with a strong suspicion of illegality. The City agreed to cause the assessments to be collected. It did not guarantee the collection, but it did in effect agree not to do anything that would seriously interfere with the collection of the assessments.

Substantially the same question involved in this case has been determined by this Court in City of McLaughlin v. Turgeon, 8 Cir., 75 F.2d 402, and City of Canton v. Tinan, 8 Cir., 104 F.2d 961. In the former case the City Auditor made only one certification, certifying simultaneously delinquent assessments for several years and all remaining assessments not then delinquent. The certification was held to be so irregular as to amount to no certification and the City was held liable for a breach of its covenant, similar to the one here involved. In the City of Canton case the delinquent assessments for the first four years were certified simultaneously. Later certifications were properly made. Applying the principle ennunciated in the City of McLaughlin case the certification was again held to be so irregular as to constitute a substantial breach of the same covenant.

■ While obviously the facts in neither of the two cases referred to are identical with the facts here, there can be no real distinction for present purposes between a breach of covenant arising out of a certification such as those in City of McLaughlin v. Turgeon and City of Canton v. Tinan, supra, and the certification in the present case which was made in defiance of the plain provision of the Statute to the wrong official. It may be, as the City contends, that because of the statutory direction that mere informalities will not affect the validity of tax titles in South Dakota, the courts of that state would reach the conclusion that the error in the certification now under consideration was not a fatal defect, but that question is a highly debatable one which could only be definitely determined by judicial proceedings. The City did not do all it reasonably could do to cause the assessments to be collected when it brought about the present situation. Its dereliction substantially affected plaintiff's rights and hence was a substantial violation of its agreement.

■ The contention that plaintiff's opportunity to collect the assessments due on the property which was sold to the County in 1935 has not been injuriously affected because the former owners of that property would be required by the Law of South Dakota to pay all delinquent assessments before the tax deeds could be invalidated,[4] is in effect an argument in support of the theory that the error in certification was not a substantial breach of the City's covenant. The answer to that argument is that plaintiff was entitled to have the sale as free from irregularities as reasonable care on the part of the City could make it. A sale clouded by obvious legal irregularities does not attract cash purchasers at fair values. Absent such purchasers at those values plaintiff's opportunity to realize the amount of the delinquent assessments in cash was greatly minimized. The County's compulsory bid was of no benefit to plaintiff since it only resulted in

---

[4] South Dakota Revised Code 1919, Sec. 6412: "No injunction restraining the making of any local improvement under the provisions of this chapter shall be issued after the letting of the contract therefor; and whenever any action or proceeding shall be commenced and maintained in any court to restrain the collection of any assessment levied for any municipal local improvement, to recover any such assessment previously paid, to recover the possession or title of any real property sold for such an assessment, to invalidate or cancel any deed or grant thereof for such an assessment, or to restrain or delay the payment of any such assessment, the true and just amount of such assessment due upon such property must be ascertained, and judgment must be rendered therefor, making the same a lien upon the property and authorizing execution or process to issue for the collection thereof by a sale of the property."

the transfer of title without the payment of any cash consideration. And the fact that the County's compulsory bid was the only one received implies a scarcity of interested buyers and tends to further strengthen plaintiff's contention that the patent irregularity in the certification materially and injuriously affected the sale. The protection to the purchaser at the tax sale afforded by the requirement that the amount of delinquent assessments must be paid before his title be disturbed is no substitute for the right of the plaintiff to a sale as free from legal defects as the City could reasonably make it.

The further contention that the judgment was excessive has been decided adversely to the City in both City of McLaughlin v. Turgeon and City of Canton v. Tinan, supra.

The judgment is affirmed.